Joseph C. **WALLO** and Martha A. Wallo, Respondents,

v.

Grace **ROSENBERG** et al., Appellants.

No. 23041.

Kansas City Court of Appeals.

Missouri.

Jan. 11, 1960.

Albert Thomson, Robert Coatsworth, Kansas City, Davis, Thomson, Vandyke & Fairchild, Kansas City, for appellants.

Terrance W. Imes, Kansas City, for respondents.

HUNTER, Judge.

This is an appeal from a judgment of the circuit court awarding respondents Joseph C. Wallo and Martha A. Wallo, hus-

band and wife, recovery in the sum of $7,000 following rescission of a real estate purchase of a hotel from Appellants Grant L. Kooken and Violet M. Kooken, husband and wife, for alleged misrepresentations of the premises, occupancy, expenses and rentals by their agent-manager Grace Rosenberg which Mr. Kooken reportedly affirmed. The action was tried by the court aided by an advisory jury.

The questions presented on appeal concern generally (1) whether the sellers' manager was authorized to make representations to the buyers concerning the premises; (2) whether the sellers ratified the manager's alleged misrepresentations; (3) whether the buyer, Mrs. Wallo, acting for herself and her husband, relied on her own investigations and not on any such misrepresentations; and (4) whether the buyers sustained damages entitled them to rescission.

The testimony on behalf of appellants and respondents conflicted sharply on most of the major matters involved. We will endeavor to indicate the substance of the testimony of each side on the issues before us on this appeal.

In 1953, Grant L. Kooken became the owner of the Central Hall Hotel in Kansas City. Mrs. Grace Rosenberg, who was licensed by the State of Missouri as a real estate agent as early as September 23, 1954, and remained so licensed during the period in question, had been a lessee of the premises and occupant and manager of them for some time. Grant Kooken paid Mrs. Rosenberg $5,000 for her lease and the furnishings she owned, and kept her on as manager of the premises. She continued to live in the premises and her duties admittedly included the showing and renting of the various apartments and the collection of the rents for owner Kooken.

Through transactions not pertinent to any present issue W. H. Ballard obtained the legal title to the premises, subject to a large first mortgage held by the Kookens.

Respondents, Mr. and Mrs. Wallo, were looking for income property to purchase. A blind advertisement appeared in the Kansas City Star on November 1, 1956, offering some rental property for sale. Mrs. Wallo answered the advertisement by letter. A few days later she was called on the telephone by Mrs. Rosenberg, who then, and on numerous successive calls, endeavored to sell the hotel to Mrs. Wallo who initially expressed disinterest as she had not had experience with hotel property.

According to Mrs. Wallo, Mrs. Rosenberg told her that the hotel property was bringing in $386 per week in rents. Mrs. Wallo asked to see the hotel books. Mrs. Rosenberg told her Mr. Kooken, the owner, kept all the books on the property but that she would give Mrs. Wallo a list of its income and expenses. In a few days Mrs. Rosenberg gave Mrs. Wallo a written list purporting to show what rooms were rented and the amount of rent being paid for each. This written list (exhibit 7) is in evidence. It gave the total rentals as $386 per week, $20,072 per year, and the expenses of operating the hotel as $933 per month which included a mortgage payment of $500. Additionally, it showed $312 per year annual taxes.

Mrs. Wallo visited the premises, and saw all of the apartments except seven. As to them, according to Mrs. Wallo, Mrs. Rosenberg gave the excuse that the tenants had lost their keys, that she had given her keys to these tenants and thus could not get into these seven apartments to show them. She assured Mrs. Wallo they were occupied and were in the same condition as the other apartments shown and told her the property could be bought for $51,000. Mrs. Wallo further testified she believed and relied on all these representations and made an oral offer to purchase the property for $51,000.

Shortly thereafter Mr. Kooken got in touch with Mr. Ballard and they agreed if the $51,000 price was accepted Kooken was

to pay Ballard $1,500 for his entire interest in the property. Later, in accordance with this agreement, Kooken did pay Ballard this sum for conveying his interest in the property to the Wallos.

Meanwhile, Mrs. Rosenberg made arrangements for Mrs. Wallo to meet Mr. Kooken. A day or two later as arranged by Mrs. Rosenberg, Mrs. Wallo met Mr. Kooken in Mrs. Rosenberg's apartment in the hotel. He had with him a written agreement for the sale of the hotel to her for $51,000, calling for an initial payment of $1,000 and a closing payment of an additional $6,000 with a specified note and mortgage for the balance. The agreement contained a clause drawn by Mr. Kooken's attorney which read, " * * * the undersigned to accept the property in present condition and upon own investigation."

Mrs. Wallo testified she then asked Mr. Kooken for the hotel books so that she could examine them. According to her, Kooken replied that he had several pieces of property; that his books were altogether; that he could not show them to her because all of the properties were put in the book together; that Mrs. Rosenberg had told her all about the rents—had showed her that—and it (what she said) would be just the same as was in the book. Mrs. Wallo testified that believing and relying on Mr. Kooken's statements she signed his proffered contract and gave him her check for $1,000.

The abstract for the premises was then furnished to Mr. Miller, an attorney employed by Mrs. Wallo to examine it. The closing took place on December 13, 1956, in the office of Mr. Lebrecht, Mr. Kooken's attorney.

There, a closing statement was being prepared by Mr. Lebrecht with Mr. Miller. There was also a statement of proration of rentals. This proration statement showed a total of eight tenants listed by room number and rental basis. Mrs. Wallo gave Mr. Kooken her check for $6,000. She testified, "I had given Mr. Kooken the money, then Mr. Kooken said, 'I have this rent for you, proration—that I am prorating to you.'" * * * "Now, he said, 'You have got this much coming back from my rent.' So I just assumed that that is what it was and I took it." "Q. Did they give you a sheet like that which broke down the proration? A. No, I have no sheet like that." * * * "He gave me, just gave me the money." * * * "Mrs. Rosenberg had told me he would, she said she had figured it all out for me and that Mr. Kooken would give me that up there at the office." Mr. Lebrecht testified he made up the mentioned proration sheet. Mr. Miller testified he had never been in the property; that a day on two after the closing Mrs. Wallo, who had gotten a copy of the closing statement, told him there was an error of $100 in it, and this was later corrected.

Mrs. Wallo testified that after she went into possession about December 15, 1956, she discovered the rentals were not as represented to her orally and in the mentioned (exhibit 7) memorandum; that only a part of the apartments were rented for the amounts represented and many were for substantially lower amounts; that not all of the apartments were rented as represented but many were vacant; that the seven apartments which had been represented as rented but which she was told she could not see because of lost keys, were not rented and were in such bad physical condition as to be untenantable; that the rents instead of totaling $386 per week as represented actually totalled only $184 per week which was the highest possible rental that could be obtained in view of the condition of the property; and that the expenses of operation were substantially more than represented, averaging $548.67 per month instead of the $433 contained in the mentioned statement provided her by Mrs. Rosenberg.

Upon learning this Mrs. Wallo thought of calling a real estate broker to sell the property but upon being told by Mrs. Rosenberg, who had remained on as manager,

that she was the only one who could sell it and that she had an old couple in mind who might buy it for $60,000, Mrs. Wallo concluded if such a sale could be made the same misrepresentations would have to be made as were made to her, and she refused to have anything to do with such conduct. She made the first payment due on the deed of trust and then secured counsel and on February 5, 1957, filed this action for rescission.

In their petition Mrs. Wallo and her husband tendered title and possession of the premises to defendants, and held it subject to defendants' instructions. Thereafter, the Kookens foreclosed their deed of trust and the premises were bought in by them at the trustee's sale on April 19, 1957. Upon demand, the Wallos immediately gave possession to them.

Mrs. Rosenberg did not appear at the trial. Although originally she was a defendant in the case, the action at the request of the Wallos was dismissed as to her during the trial.

Mr. Kooken testified in considerable detail. His testimony was in conflict with that of Mrs. Wallo in most respects. He specifically denied that Mrs. Rosenberg was his agent to sell the property. He stated that he "never authorized Grace Rosenberg to give her (Mrs. Wallo) any statement (exhibit 7) like you have been circulating among the jury and those things." He was asked, "Q. Did you make any arrangements with Mrs. Rosenberg that she was to sell the property for you or for Mr. Ballard or to make any effort to do that? A. No. I surely didn't." He stated Mrs. Rosenberg's job as his manager was "to show the property to rent rooms, to show the rooms." "Q. How about the buyers? A. I never had no specific arrangement with her on buyers at all because I had depended on Mr. Ballard to sell the property and thought he would * * *." He testified that he knew nothing about any such representations as Mrs. Rosenberg is alleged to have

made to Mrs. Wallo and, in effect, denied he had told Mrs. Wallo that she could not see his books and could rely on them showing what Mrs. Rosenberg had said about rentals and occupancy.

The advisory jury found all the pertinent factual issues in favor of the Wallos and rendered its verdict in their favor for $7,000. The trial court accepted the jury's findings and upon the request of the Kookens also made specific findings of fact and conclusions of law in favor of the Wallos, decreed cancellation of the purchase contract, found that as title to the hotel premises had been reconveyed to the Kookens by virtue of the foreclosure of the deed of trust on the property executed by the Wallos to secure the payment of the balance of the purchase price no decree requiring reconveyance need be made; that reconveyance to the Kookens had in fact been accomplished and released the Wallos from any liability on their note, and entered judgment in favor of the Wallos for $7,000.

■ This court has jurisdiction of this appeal for title to real estate is not directly involved in the constitutional—jurisdictional sense. Under the facts title to hotel premises is in and remains in the Kookens, and the question before us in the final analysis is the dispute over the $7,000 Mrs. Wallo paid Mr. Kooken. V.A.M.S. Const. Art. 5, § 3; Turley v. Matthews, Mo.Sup., 172 S.W.2d 936; Pursley v. Pursley, Mo.Sup., 213 S.W.2d 291; Mitchell v. McClelland, Mo.App., 306 S.W.2d 75, and cases cited therein.

■ In the appeal of an equity case our duty is to review the record de novo, and determine the credibility, weight and value of the evidence giving due deference to the trial chancellor's findings, particularly where the testimony is close and conflicting and he saw and heard the witnesses. Our final duty is to affirm the judgment below or direct such judgment as justice requires.

Appellants' first contention is that the trial court erred in finding Mrs. Rosenberg

to be Mr. Kooken's agent in selling the hotel to respondents and in finding appellants responsible for her representations.

Appellants do not undertake to convince that Mrs. Rosenberg did not make the mentioned misrepresentations to Mrs. Wallo but rather contend Mrs. Rosenberg was not their agent so as to make them responsible for any such misrepresentations. They tacitly concede that since Mr. Kooken acted for both himself and his wife if Mr. Kooken is responsible for the representations of Mrs. Rosenberg then Mrs. Kooken is likewise responsible for them.

■ The advisory jury and the trial judge found the agency issue in favor of the Wallos, and we agree with that finding. It is well settled that there is no particular mode by which an agency must be established. It is necessary only that the credible facts, taken as a whole, fairly disclose that one party is acting for or representing another by the latter's authority. The relationship of agency is often to be implied from the words and conduct of the parties to the transaction, and it is not necessary that there be a formal appointment and acceptance thereof. If from the facts and circumstances it appears there was at least an implied intent to create it, the relationship may be found to exist notwithstanding a denial by the alleged principal. And, if there is agency, then the principal is bound if true representations as to the same matter are within the authority or apparent authority of the agent. See, Hawkins v. Laughlin, Mo.App., 236 S.W. 2d 375; Restatement of the Law, Agency 2d, Art. 162, p. 384; Mitchum v. Dunlap, 98 Mo. 418, 11 S.W. 989; 2 C.J.S. Agency § 23, p. 1045.

■ Additionally, according to Mrs. Wallo's testimony, which the advisory jury, trial court and we accept, Mr. Kooken, in order to get Mrs. Wallo to enter into the purchase contract, told her there was no need to examine his hotel books for they would substantiate what Mrs. Rosenberg had told her about the hotel. This we hold to be a recognition of, and, in any event, a ratification of Mrs. Rosenberg's authority to make representations on his behalf concerning the hotel's occupancy, income and expenses. See, Large v. Frick Co., 215 Mo.App. 232, 256 S.W. 90; 2 C.J. S. Agency § 42(d), p. 1085; Newco Land Co. v. Martin, 358 Mo. 99, 213 S.W.2d 504; Walker v. Hassler, Mo.App., 240 S.W. 257. We find no merit in appellants' first contention.

Secondly, appellants contend the trial court erred in finding Mrs. Wallo was entitled to rely and did rely on any misrepresentations made by Mrs. Rosenberg for the assigned reason the evidence was to the contrary. Appellants refer specifically to the clause placed in the contract by their attorney reading "the undersigned to accept the property in its present condition and upon own investigation." They stress that Mrs. Wallo was a business woman experienced at least to some degree in apartment rentals and management and that she visited the hotel premises and found the building in good condition and in need of few repairs. They argue that if she felt she needed a more thorough check before signing she could have done so for there was no evidence that she was pressured in-into the agreement by Mr. Kooken. They also say the evidence indicates she intended to move the tenants out and redecorate the apartments, and, hence, was not in fact relying on any representations as to the number of tenants in occupancy.

■ What we have said in ruling the agency contention adversely to appellants also answers most of this contention. Appellants are bound by Mrs. Rosenberg's misrepresentations made as their manager-agent and being bound by them cannot escape their legal effect on the ground that the buyer should have made a more thorough investigation or that the contract contained the mentioned clause. As stated in Bertram v. Kempster, Mo.Sup., 216 S.W. 2d 494, 496:

" 'Fraud is a willful, malevolent act, directed to perpetrating a wrong to the rights of another. That such an act in a vendor should not be actionable because of the mere negligence or inadvertence of the vendee in preventing the fraud ought to be neither good ethics nor good law. If one voluntarily shuts his eyes when to open them is to see, such a one is guilty of an act of folly (in dealing at arm's length with another) to his own injury; and the affairs of men could not go on if courts were being called upon to rip up transactions of that sort. * * * But when an element of willful deception leads up to a transaction, the whole situation changes.' Judd v. Walker, 215 Mo. 312, at pages 337 and 338, 114 S.W. 979, at page 980. Hence, in an action for fraud, it is misleading to say the evidence must show fraud plus absence of negligence. And it is a misnomer to use the word 'negligence' in this connection if it is understood as carrying its usual signification, because 'the law of fraud does not exact of the victim that degree of caution which some other hypothetically prudent person would have used, but only reasonable care in view of his situation. * * * The snares of the fraudfeasor are most often set for the incompetent, the ignorant, and the unwary.' "

As to the mentioned clause, this same type of provision was discussed in Rabenau v. Harrell, 278 Mo. 247, 213 S.W. 92, 94:

"It is finally insisted by appellants that in the contract for exchange plaintiff W. J. Rabenau agreed in advance that he acted upon his own investigations in making such purchase, and that no promises, representations, or agreements should be binding upon the seller unless included in said writing. This provision was contained in the preliminary exchange agreement between the husband and the defendant company, and would not be available even as to him to preclude evidence tending to show that the agreement was procured and the deeds ultimately exchanged because of fraudulent and deceitful misrepresentations upon the part of the seller which were relied upon by the buyer at the time of making his contract and his deed. The clause would suffice to make the writing the sole repository of the agreements of the parties, but it would not go beyond that and shut off proof that the written contracts themselves were obtained by fraud. Its insertion in the contract under review is not unlike (what has often happened in conveyancing) the statement in a grantor's deed that 'this deed is not fraudulent.' In construing instruments of that sort, courts of equity have held that such a recital in a deed was susceptible of such sinister construction that, of itself, it would suggest that the deed was fraudulently made. However that may be, the terms of the provision in this case do not prevent any inquiry between the parties as to the fraudulent and deceitful character of the representations as to the irrigation system." See also, Ruler v. M. & M. Motor Company, Mo.App., 231 S.W.2d 277, 282; Rice v. Lammers, Mo.App., 65 S.W.2d 151.

We believe, as did the trial court and its advisory jury, that Mrs. Wallo did rely upon the misrepresentations and that she had a right to rely upon them. We find no merit in appellants' second contention.

Appellants' final contention is the trial court erred in finding that respondents sustained damage by reason of any misrepresentations made concerning the premises because respondents failed to prove they were damaged. They assert that if the actual value of the building was $51,000 it is unimportant that the rentals were substantially less than represented, and that respondents must be held to fail in this action for failing to introduce testimony as to the building's value.

Accepting respondents' testimony as we have, it shows Mr. Kooken through Mrs. Rosenberg represented to Mrs. Wallo that the property was actually bringing in $386 per week in rents. This was false. The property actually was taking in only $184 per week. The seven unshown apartments were represented as being in the same con-

dition as certain others viewed. This was false. They were in such deplorable shape as to be unrentable. By reason of these false and fraudulent statements respondents were not getting that for which they had bargained but were getting something substantially less. They were entitled to rescission and the return of their money. This is not an action wherein a defrauded party elects to affirm the contract and sue for damages for the breach but rather is one where the party charged with the fraud already has his property back and the defrauded party is seeking the return of the money he paid for it. See, Walters v. Larson, Mo.App., 270 S.W. 2d 112, 116; Salmon v. Brookshire, Mo. App., 301 S.W.2d 48, 54; Schroeder v. Zykan, Mo.App., 255 S.W.2d 105, 111. We find no merit in appellants' final contention.

For the reasons stated, the judgment of the trial court in all respects is affirmed.

BROADDUS, J., and SAM C. BLAIR, Special Judge, concur.

CAVE, P. J., not sitting.