Willie W. SMOOT and Leaverta Curry and Blanche Elizabeth Smoot and Bobbie Pettigrew, Plaintiffs-Appellants,

v.

Eddie MARKS and Supreme Cab Company, a corporation, Defendants-Respondents.

No. 38184.

Missouri Court of Appeals, St. Louis District, En Banc.

Jan. 24, 1978.

Motion for Rehearing and/or Transfer Denied March 10, 1978.

Steven I. Toybes, Fox, Goldblatt & Singer, Inc., St. Louis, for plaintiffs-appellants.

Morris Shenker, Cordell Siegel, St. Louis, for defendants-respondents.

SIMEONE, Chief Judge.

This is an appeal by plaintiffs-appellants from a judgment of the Circuit Court of the City of St. Louis which set aside jury verdicts in favor of the plaintiffs and which sustained the respondent-Supreme Cab Company's motion for judgment notwithstanding the verdicts. Rule 72.01(b). We issued our divisional opinion on September 27, 1977, reversing the judgment of the circuit court. Supreme Cab filed its motion for rehearing. We sustained the motion for rehearing and heard arguments before an expanded panel. We now withdraw our divisional opinion and, for reasons hereinafter stated, we adhere to the conclusion reached in our divisional opinion. We reverse the trial court's judgment and remand the cause with instructions to reinstate the verdicts of the jury and enter judgments in accordance therewith.

The facts giving rise to this litigation follow.

On August 24, 1974, Mr. Willie Smoot was operating his automobile northwardly on Grand Avenue in the City of St. Louis at or near Hebert Street. His mother, Blanche Elizabeth Smoot, his grandmother, Leaverta Curry, and his girlfriend, Bobbie Pettigrew, were passengers in the automobile. As Mr. Smoot stopped behind a bus he was struck from the rear by an automobile bearing the insignia Supreme Cab or Supreme Cab Co. and driven by Mr. Eddie Marks. The taxi pushed Mr. Smoot's automobile into the bus. Mr. Smoot and his passengers were injured. All four plaintiffs filed suit against the driver of the taxi, Mr. Eddie Marks, and the Supreme Cab Company seeking damages. Trial was held in 1976. All the witnesses—Smoot, Mrs. Smoot, Mrs. Curry and Bobbie Pettigrew—testified that the taxi was marked with the words "Supreme Cab Co." on the side of the door and on the dome light on top of the cab. Bobbie Pettigrew testified that the number 135 was painted on the cab. Mr. Smoot did not talk to the driver of the vehicle, Mr. Eddie Marks, but did talk to the police. The driver of the taxi "ap-

peared to be intoxicated." "He was running off at the mouth and he was kind of staggering a little bit, smelled like he was —." According to Miss Pettigrew, the man "did a whole lot of lipping but finally told me that he didn't have anything to say, he'd call his supervisor." According to Miss Pettigrew, Mr. Marks would not give any information to Mr. Smoot so she called the police. At the scene, Marks "clowned a whole lot . . . he told me [Pettigrew] to get out of his face . . .." Miss Pettigrew said:

"This man came from Supreme Cab. Miss Curry and Blanche went on to the hospital first. We followed later. This man went with us to the hospital, the supervisor. I forget what his name is. And he was there when we checked, you know, at the emergency room and stuff like this and he wanted to make a settlement then." [1]

Bobbie Pettigrew further testified that Marks told her he was going to call the supervisor and

"[t]he man came. He showed a badge, you know."

.     .     .     .     .

. . . [H]e flashed something, that he was the agent from Supreme Cab. He identified himself being—I say this: He identified himself. He gave me his name and something else but I filed this accident report . . . when he seen the car and everything and seen that when we went to the hospital—Willie's mother was hospitalized—he wanted to fix Willie's car, you know. He said he wanted to do the fair thing that was right."

There was no objection to this testimony.

At trial the defense presented two witnesses—Florence Brodkin, vice president of Supreme Cab and head bookkeeper, and Mr.

Doyne Beckley, license inspection supervisor for the City of St. Louis. The thrust of their testimony was that certain procedures are required before a taxicab is considered in service for operation as a taxicab, and that this particular taxicab operated by Mr. Eddie Marks on August 24, 1974 was out of service and did not obtain an in-service status until September, 1974.

Florence Brodkin testified that none of the cabs are actually owned by the company but by the driver or "somebody who hires the driver." She explained the procedure for driving a taxicab for Supreme Cab Company: (1) the applicant must apply for a "spot"—there are only forty-five openings; (2) the taxi must be inspected and a Board of Public Service sticker obtained indicating the taxi was capable of being driven; (3) the sticker would be affixed to the rear window of the cab and then other licensing was required; (4) additional licensing procedures have to be complied with; (5) a $150.00 fee must be paid by the applicant to Supreme Cab Co. which in turn furnishes dispatchers and service to send drivers out to a particular location and "supervision, any normal help;" and (6) after the fee is paid, the City must issue a monthly insurance Board of Public Service sticker to be put on the windshield and "it's only issued if that cab is eligible to drive that month." A driver would not go to the company to have the cab painted with an insignia. She testified that on August 21 (24?) Supreme Co. cab 135 was not in service. She explained exhibit A—the company's allocation of the 45 cabs allotted to Supreme Cab from July 1974 through June 1975. The exhibit showed the numbers of the cabs, the names of the drivers, the fee paid for each and other data. Under the notation cab 135 the name C. Williams [2] was

---

1. This statement was made after counsel for plaintiffs told the witness to "Go ahead." At the end of the "answer," counsel for defendant objected because the answer was not responsive to the "question." The objection was sustained. Counsel for plaintiff then asked whether the man identified himself as a supervisor. An objection was made. A colloquy followed on the ground that a statement of an agent is

not admissible against the principal. The defendant, in the colloquy, indicated that the witness said that the man was "a supervisor of the Supreme Cab Company." The court sustained the objection to the question ". . . did this man identify himself as a supervisor or of what —."

2. Mr. Williams "would have been the gentleman who had previously owned the cab before

crossed out and the name Marks inserted.[3] As to the months of July and August the exhibit shows cab 135 as "Out" indicating out of service although there is a notation that $49.00 had been paid on August 21, 1974 as a deposit. According to Mrs. Brodkin, the cab went in service in September. According to her, Marks would have been "authorized to operate as an agent of Supreme Cab" when "he paid the balance of that sticker money and we issued him the sticker to be affixed to the front of the cab." The balance of the $150.00 was paid on September 3 as shown by a receipt. She testified that, prior to September 3, Mr. Marks was not a driver "for Supreme Cab Company." As to a supervisor being called, the supervisor would "simply go out and investigate what had happened." And, when a supervisor went out when a call came in, it would not indicate that the person calling was or was not "an employee or agent of the Supreme Cab Company." On cross-examination she did not know, without checking the records, whether there was an "accident report" of the incident on August 24, but when she went over the records prior to coming to court she did not "discover" any report.

Mr. Doyne Beckley also explained the procedure required to place a taxicab in service in the City. According to his records, the cab owned by Marks was previously out of service and titled in another person. He reiterated that if the cab does not have a monthly insurance sticker it is not allowed to gö out on the street. No monthly insurance sticker had been issued for the month of August. The insurance sticker, introduced as an exhibit, had not been issued to cab 135. The net effect of his testimony was that the cab was not in service in July and August.

On cross-examination he admitted that taxicabs "will be on the street and not

properly licensed." In such instances Mr. Beckley contacts the police department for enforcement.

At the conclusion of the defendant's case, a statement of Mr. Marks taken before a court reporter and by an employee of Supreme Cab two days after the incident was introduced over objection as an "admission against interest." In the statement, Mr. Marks stated that he was not employed but had a Pontiac with "Supreme Cab" on it, that he intended to go "into service as an operator" of the cab on September 1. He admitted having an accident on August 24, 1974, and that "[a] little kid named John" was in the automobile at the time and that he was "going to cut some grass." A lawnmower was in the back. He stated that he was on his own personal business. He recognized that to put a cab on the Supreme stand it would cost $150.00 a month and that he paid $49.00 and would pay the balance on August 31.

Mr. Marks did not testify or appear at the trial. He could not be located.

Defendant's motion for a directed verdict was overruled.

The court instructed the jury in separate instructions that a verdict could be rendered for each plaintiff if the jury believed that (1) Mr. Marks was an "employee" of Supreme Cab Company and was operating "within the scope and course of his employment,"[4] (2) Mr. Marks' automobile came into collision with the rear of plaintiff's automobile, (3) Mr. Marks was negligent, and (4) as a direct result of such negligence, plaintiffs were injured.

The jury returned a verdict for each of the four plaintiffs in the amount of $1,000.00 each against both Marks and Supreme Cab Company. In proper time Supreme Cab moved for judgment in accord-

---

it was taken out of service." The cab apparently was in service to Mr. Williams "[e]vidently sometime before the beginning of this fiscal year . . . ."

3. As to cab 109, the name Marks was also inserted.

4. This term was defined—acts were within the "scope and course" if (1) they were performed by Mr. Marks to "serve the business of Supreme Cab Company according to an express or implied agreement" and (2) Supreme "either controlled or had the right to control the physical conduct of Eddie Marks."

ance with its motion for a directed verdict, contending that there was no evidence to prove that Mr. Marks was operating the vehicle "within the scope and course of his employment or agency for Supreme Cab Company," and that the evidence proved that cab 135 was not in service during the month of August, 1974.

On May 14, 1976, the trial court sustained the motion notwithstanding the verdict and the plaintiffs duly appealed.

On this appeal plaintiffs contend the court erred in sustaining the motion to set aside the verdict because a fact question relating to whether Mr. Marks was an agent of Supreme Cab at the time of the incident was raised. Appellants contend that (1) agency may be implied from the "words and conduct of the parties," (2) agency may be inferred from the circumstances and may be established by circumstantial evidence, and (3) where a supervisor "has made statements in relation to the Defendant's responsibility for compensating plaintiff," agency can be established.

On the other hand, respondent contends that the trial court did not err because the evidence was insufficient, as a matter of law, to raise a jury issue as to whether Mr. Marks was an employee of Supreme Cab acting within the scope and course of his employment. The company argues that (1) plaintiffs failed to show that Mr. Marks was authorized or directed by Supreme Cab to paint the company name on the vehicle; (2) there was no admission by the supervisor that Eddie Marks was a driver for Supreme Cab Company; (3) the evidence showed that cab 135 was not in service in August, 1974 since Mr. Marks had neither paid the $150.00 monthly fee nor been issued the monthly Board of Public Service sticker as required by Supreme Cab; (4) the

balance of the $150.00 was not tendered to Supreme Cab until September, 1974; (5) Mr. Marks admitted in his "sworn" statement that he was not to go into service as an employee until September; (6) according to the license inspection supervisor no sticker had been issued for cab 135 for August; (7) there was no evidence that the boy present in the cab was a fare-paying passenger; and (8) Mr. Marks was on his own personal business at the time of the accident.

Respondent argues that plaintiffs failed to introduce substantial evidence that Mr. Marks was an employee or that he was acting within the scope and course of his employment.

■ Since the sole issue here is whether a submissible case was made, we must view the facts in a light most favorable to the plaintiffs and give them the benefit of all reasonable inferences arising from the evidence, disregarding defendant's evidence except where it favors the plaintiffs' case. *Stout v. Central National Life Insurance Company*, 522 S.W.2d 124, 128 (Mo.App. 1975); *Hopkins v. J. I. Case Company*, 293 S.W.2d 402, 407 (Mo.1956); *Dovino v. General American Life Ins. Co.*, 127 S.W.2d 732, 736 (Mo.App.1939); *Baker v. St. Paul Fire & Marine Insurance Company*, 427 S.W.2d 281, 284 (Mo.App.1968); *Clymer v. Tennison*, 384 S.W.2d 829, 834 (Mo.App.1964); *De Mariano v. St. Louis Public Service Company*, 340 S.W.2d 735, 739 (Mo.1960).

■ This case is not one of the normal cases involving a "presumption" of agency when an action is brought against an owner of a vehicle,[5] nor is it one where the fact or scope of agency is established by the out of court declarations of the alleged agent— here Marks.[6]

---

**5.** *See Guthrie v. Holmes*, 272 Mo. 215, 198 S.W. 854 (Mo. banc 1917); *Chandler v. New Moon Homes, Inc.*, 418 S.W.2d 130 (Mo. banc 1967) and cases cited therein; *Terminal Warehouses of St. Joseph, Inc. v. Reiners*, 371 S.W.2d 311 (Mo.1963); *Rosser v. Standard Milling Co.*, 312 S.W.2d 106 (Mo.1958); *Wills v. Townes Cadillac-Oldsmobile, Incorporated*, 490 S.W.2d 257, 259–260 (Mo.1973).

**6.** *Davis v. Sedalia Yellow Cab Company*, 280 S.W.2d 869 (Mo.App.1955) and cases cited therein; *Rosser*, 312 S.W.2d at 110; *Roush v. Alkire Truck Lines*, 299 S.W.2d 518 (Mo.1957); *German v. Kansas City*, 512 S.W.2d 135 (Mo. banc 1974); 3 Am.Jur.2d, Agency, § 354, pp. 711–713 (1962); Anno., 3 A.L.R.2d 598 (1949); *State v. Bland*, 355 Mo. 17, 194 S.W.2d 42

The precise issue which we are to determine is whether there was sufficient substantial evidence [7] adduced favorable to the plaintiff and all inferences therefrom to raise a jury question as to the fact of agency. Or, in other words, was the evidence favorable to the plaintiffs and were reasonable inferences therefrom sufficient so that reasonable minds could differ as to whether Mr. Marks was, on August 24, 1974, an employee of Supreme Cab Company acting in the scope and course of his employment?

While the facts are not complex, the resolution of this cause is extremely difficult. The general rules resorted to by the courts are well settled, but the difficulty in this close case arises not in stating the legal principles but in attempting to apply them to the particular facts.

Certain principles aid in the determination of this dispositive issue.

■ (1) It is axiomatic that a principal is responsible for injury to a third person by negligence or misconduct of his employee while acting within the scope of his employment. *Burks v. Leap*, 413 S.W.2d 258, 266 (Mo.1967); 20A Mo.Digest, Master & Servant, ■

■ (2) There is no particular method or mode by which an agency or employment relationship is established. It is necessary only that the credible facts, taken as a whole, fairly disclose that a party is acting for or representing another by the latter's authority. *Wallo v. Rosenberg*, 331 S.W.2d 8, 13 (Mo.App.1960).

■ (3) Direct evidence of the relationship of employer-employee is not required to establish the relationship, but the fact of such a relationship may be established by circumstantial as well as direct evidence. *Hopkins*, 293 S.W.2d at 407; *Smith v. St. Louis Public Service Co.*, 84 S.W.2d 161, 164 (Mo.App.1935); *Bland*, 194 S.W.2d at 46; *Dovino*, 127 S.W.2d at 736; *Garvis v. K Mart Discount Store*, 461 S.W.2d 317, 320 (Mo.App.1970); 3 Am.Jur.2d, Agency, § 351, p. 708 (1962); *Duke v. Thomas*, 343 S.W.2d 656, 660 (Mo.App.1961).

■ (4) Generally, the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship. The employment relation is a question of law for the court only where the material facts from which it is to be inferred are not in dispute and only one reasonable conclusion can be drawn therefrom.[8]

■ If there is uncertainty arising either from conflict in the testimony or because the undisputed facts may lead reasonable men to draw different conclusions as to whether the employee was such and acting in the scope and course of his employment, "the question becomes not one of law but of fact to be settled by the jury." *De Mariano*, 340 S.W.2d at 739–740.

■ Within these general guidelines, we believe that there was sufficient, substantial evidence to submit to the jury the issue whether at the time of the incident Mr. Marks was an agent of Supreme Cab Company acting within the scope and course of his employment. The facts and all reasonable inferences therefrom show that (1) the taxicab had the insignia of Supreme Cab on the side and on the dome and that it had

---

(banc 1946). The respondent cab company does not raise the issue whether the statements of the "supervisor" were admissible against it.

7. Substantial evidence is evidence which, if true, has probative force upon the issues, i. e., evidence favoring facts which are such that reasonable men may differ as to whether it establishes them; it is evidence from which the trier or triers of the fact reasonably could find the issues in harmony therewith; it is evidence of a character sufficiently substantial to warrant the trier of facts in finding from it the facts to establish which the evidence was introduced. *Terminal Warehouses, etc.*, 371 S.W.2d at 317.

8. *Schneider v. Dubinsky Realty Co.*, 344 Mo. 654, 127 S.W.2d 691, 694 (1939); *De Mariano*, 340 S.W.2d at 739; *Baker*, 427 S.W.2d at 293; 20A Mo.Digest, Master & Servant, ■ 53 Am.Jur.2d, Master and Servant, § 460, pp. 484–485 (1970) and Supp. p. 17.

previously been in service; (2) after the incident, Mr. Marks was uncooperative but did give information to the police; (3) Mr. Marks didn't have anything to say but that he would call his "supervisor;" (4) a man came from Supreme Cab and went to the hospital with the injured persons; while there he indicated he wanted to make a settlement—"he wanted to fix Willie's car" and do the "fair thing;"[9] (5) Mr. Marks had paid to Supreme Cab $49.00 of the $150.00 monthly fee prior to the incident; (6) from the evidence and even from the respondent's brief it can be fairly stated that the man who came from Supreme Cab was a supervisor;[10] (7) Mr. Beckley testified that there were other cabs on the street that had not fully complied with all the licensing requirements and in such instances these matters were referred to the police; and (8) the procedures to license a cab so that it would officially be "in service" were internal matters between the driver and the cab company and the City.

The defendant's evidence showed: (1) that the vehicle was, at the time of the incident, "out of service," (2) that the $150.00 had not been fully paid, but that a portion of the fee had been paid, (3) that no monthly sticker[11] had been issued for August, 1974 and that the sticker had not been delivered, (4) that Mr. Marks in the sworn statement[12] stated he was on his own business and was going to cut some grass, and that he had not as yet paid the full $150.00 fee.

Under all the unique circumstances, we believe that reasonable minds could differ as to whether Mr. Marks was, on August 24, 1974, at the time of the incident, an employee of Supreme Cab acting in the scope and course of employment so that the case should have been submitted to the jury. Cf. Garvis, 461 S.W.2d 317.[13]

The result we reach conforms to the more modern decisions in other jurisdictions. In recent years the courts have become increasingly concerned about the responsibility of taxicabs which serve the public. The liability of taxicab companies which engage in the business of furnishing services to a driver who owns the taxicab has been a much-discussed topic in the law. See Anno., Tort Liability of Taxicab Company, 8 A.L.R.3d 818 (1966). Several recent decisions have held that evidence of defendant company's name, insignia or colors upon the taxicab creates a prima facie case that the company had custody and control of the cab, whether the company owned it or not. Our "fabric of correlative social responsibility, as well as the requirements of simple

9. Appellants rely on *Gregar v. Broadway Auto Laundry*, 83 S.W.2d 142 (Mo.App.1935). There plaintiff took his car to defendant's garage to be repaired and the "defendant's manager" told officers that the man to whom plaintiff had intrusted his automobile " 'works for us and he said he would take care of the car.' " In that case the admission was sufficient to prove agency. In this case the "supervisor," while not indicating that Mr. Marks was an employee, did indicate that he desired to fix Willie Smoot's car and at the hospital do the "fair thing."

10. Respondent in its brief indicates there was no admission by the "supervisor" that Eddie Marks was a driver for Supreme Cab Company.

11. If a monthly fee were not paid and a driver of Supreme Cab continued carrying fare-paying passengers, could it be fairly said that the driver was not an employee acting within the scope of his employment?

12. It is difficult to comprehend how this statement was introduced at the behest of the defendant as an "admission against interest." The statement was not introduced by the plaintiffs. It could have been introduced as an admission against Marks but not against Supreme Cab. There were no "admissions" against his interest. It was self-serving and hearsay.

13. In this unique situation, the taxicab ran into the rear of Smoot's automobile resulting in injuries to plaintiffs. Taking the same facts as shown by this evidence, but instead of the Smoot automobile being hit from the rear, suppose that Mr. Marks had been carrying a fare-paying passenger and that the passenger was injured. Under the evidence shown here by the respondent and in those circumstances, would a submissible case be made so as to raise a fact question for the jury whether Mr. Marks was an employee of Supreme Cab and whether he was in the scope and course of his employment? We believe so. The situation here is sufficiently analogous.

justice" require no less. *See Thomas v. Checker Cab Co., Inc.*, 66 Mich.App. 152, 238 N.W.2d 558, 561 (1976) and cases cited therein. Of course, the responsibility of the company, in such a posture of the evidence, is not absolute. The company may introduce evidence which counteracts the prima facie case. But such countervailing evidence is normally for the jury to evaluate[14], and it would be a "rare" case where a directed verdict would be granted. *Thomas*, 238 N.W.2d at 562.

Here, we have additional evidence than the mere insignia on Marks' cab. The evidence of the plaintiffs, viewed in its most favorable light, and the favorable inferences from all the evidence establish, we believe, a jury question as to whether Marks, at the time of the incident, was an employee of Supreme Cab acting within the scope of his employment. The company's countervailing evidence tending to establish that Marks was not an employee was, under the instructions given, for the jury to evaluate.

We have read the entire transcript, the briefs and authorities relied upon by the parties; we have conducted our own research and conclude that the trial court erred in sustaining the respondent's motion for judgment in accordance with its motion for a directed verdict.

The judgment of the trial court granting the motion for judgment notwithstanding the verdict is reversed and the cause is remanded with directions to reinstate the verdicts of the jury against Supreme Cab and enter judgments in accordance therewith.

DOWD, KELLY, McMILLIAN, GUNN, STEWART and REINHARD, JJ., concur.

**14.** *See*, e. g., *Callas v. Independent Taxi Owners' Ass'n*, 62 App.D.C. 212, 66 F.2d 192 (1933); *P. & S. Taxi & Baggage Co. v. Cameron*, 183 Okl. 226, 80 P.2d 618, 622 (1938); *Mercury Cab Owners' Association v. Jones*, 79 So.2d 782, 784 (Fla.1955).