**Willie BRISON, Plaintiff-Appellant,**

v.

**Eugene O'BRIEN, Defendant-Respondent.**

**No. 44473.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 7, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Jan. 14, 1983.

Application to Transfer Denied
Feb. 23, 1983.

Shaw, Howlett & Schwartz, Clayton, for plaintiff-appellant.

Benson Cytron, House Springs, for defendant-respondent.

PUDLOWSKI, Judge.

Plaintiff sued to recover for loss of income and property damage to his construction equipment, alleging that defendant's employee left a tractor running after using it, thereby causing extensive engine damage. At the close of plaintiff's case, de-

fendant moved for a directed verdict. The trial court granted the motion and entered a judgment for the defendant, from which the plaintiff appeals. We affirm.

Upon review, we must "consider all of the evidence in the light most favorable to the plaintiff ... accord to plaintiff the benefit of all favorable inferences deducible from the evidence, [and] reject all unfavorable inferences...." *Barnett v. M & G Gas Co.,* 611 S.W.2d 370, 371 (Mo.App.1981). At the same time, we must keep in mind that it is the plaintiff's burden to establish that the negligence of defendant proximately resulted in damage to him. *Lange v. Marshall,* 622 S.W.2d 237, 238 (Mo.App. 1981). The plaintiff must present substantial evidence to support his claim; "a mere scintilla of evidence is not sufficient." *Kaelin v. Nuelle,* 537 S.W.2d 226, 230 (Mo.App. 1976).

The facts are as follows: In the fall of 1977, the Crest Machine Shop contracted separately with Willie Brison (plaintiff) and Eugene O'Brien (defendant) to put up a new building. Plaintiff was hired to haul gravel; defendant was to provide the labor and materials needed for the concrete walls. Plaintiff worked alone; defendant had a crew of several employees at the jobsite. The plaintiff used several pieces of heavy equipment in his work including an "International TD–9, 92 Series Track High-Lift" (the "TD–9"). On or about November 8, 1977, plaintiff used the TD–9 to spread gravel and then parked it within the walls of the new building before he left the jobsite. On the following day, when plaintiff was not at the jobsite, one of defendant's employees asked an employee of the Crest Machine Shop if they could use the TD–9. The employee relayed this request to an owner of the machine shop. She replied that she could not give permission, but would try to contact the plaintiff. A second request to use the TD–9 was made after the lunch hour. The machine shop owners tried to contact the plaintiff but were unable to do so. Later that afternoon, several employees of the machine shop observed that the TD–9 was being operated by a man wearing a blue fishing hat. (The

TD–9 has a push-button starter and can be operated without a key.) They had previously seen this man working and eating lunch with defendant's work crew, and driving a pickup truck with defendant's name on it. He operated the TD–9 for fifteen to thirty minutes, and left it standing under a tree with the motor still running. Several of the machine shop's employees testified that when they left work between 4:10 and 4:30 p.m., the TD–9 was still parked and idling where the man in the blue fishing hat had left it. They estimated that it had been idling for thirty minutes to an hour before they left.

The plaintiff returned to the jobsite that evening. He could not remember what time it was when he returned. The TD–9 was again parked within the walls of the new building, but in a different location from where plaintiff had left it. It was covered with black oil and was hot to the touch. Some of defendant's employees were still at the jobsite and the plaintiff asked them who had been using the TD–9. He received no response. The next morning plaintiff found that there was no oil in the machine's crankcase. He started the engine but it was knocking so badly that he took it for repairs to Brautigam's Implement Company.

Leonard Brautigam, owner of the repair shop, testified that he had performed a complete overhaul of the TD–9's engine, described the extent of his repairs, and testified as follows on the issue of causation:

Q. Now, with regard to the damage that you found on the Harvester 92 Series track high lift, do you have an opinion as to what caused the damage?

A. Well, it can be a multitude of things, because we wasn't at the site.

Q. Uh-huh.

A. It could be low oil pressure. It could have been somebody antifreezed it. It could be a lot of things.

Q. Okay.

A. Antifreeze will do the same thing as low oil pressure to a set of bearings.

Q. Well, low oil pressure could have been the cause, in your opinion, of—

A. It could have.

Q. What does the effect of a slow idle have on the oil pressure, the oil in the engine?

A. What effect does it have?

Q. Yes.

A. Well, on a regular engine, probably, not too much, but one with a turbocharger, you should run them a little faster to keep your turbocharger lubricated.

\* \* \* \* \* \*

Q. Do you have any estimate as to how long a period of time that might be until [running the engine at idle] started causing some damage?

A. No. I don't.

Q. Would a half hour be long enough?

A. That's hard to say. It depends on the turbocharger. I mean, if the turbocharger is wore—Now, if it's a brand new one, it fits a lot tighter. It's going to take more oil to lubricate it and more pressure. If it's wore, it might stand it a lot longer than a new one will.

Q. How about this particular turbocharger that you worked on?

A. I don't know how long it was on there.

Q. There's no way you can tell that?

A. No, sir.

Brautigam also stated that some of the damage could have resulted from poor maintenance or ordinary wear. The tractor had been in his shop for repairs on several other occasions both before and after this incident.

At the close of plaintiff's evidence, the defendant moved for a directed verdict. Argument on the motion was held in chambers and recorded. In granting the motion, the trial court expressed its view that the plaintiff's evidence would not support a reasonable inference (1) that the man in the blue fishing hat was an employee of defendant or (2) that the engine was left idling long enough to cause the damage complained of. We think that the issue of agency could have gone to the jury, but that the trial judge properly directed a verdict because the plaintiff's evidence could not support a finding of proximate cause.

The employer-employee relationship may be established by circumstantial as well as direct evidence. *Smoot v. Marks,* 564 S.W.2d 231, 236 (Mo.App.1978). The plaintiff presented evidence that the man in the blue fishing hat worked and ate with the rest of defendant's crew. Employment could have reasonably been inferred from these facts, even if the alleged employee was not identified by name. *Bommer v. Stedelin,* 237 S.W.2d 225, 229 (Mo.App. 1951). Three witnesses gave consistent and uncontradicted testimony about the role of the man in the blue fishing hat. Compare *Brophy v. Clisaris,* 368 S.W.2d 553, 558 (Mo. App.1963). Under these circumstances the issue could have been submitted to the jury.

Nevertheless, the trial court did not err in directing a verdict for the defendant, because the plaintiff did not make a submissible case on the issue of proximate cause. While the question of proximate cause is usually for the jury, in rare cases and under clear and compelling circumstances, the question becomes one of law for the court. *Lange v. Marshall,* 622 S.W.2d 237, 238 (Mo.App.1981). Where the evidence connecting the injury to the negligence amounts to mere conjecture and speculation the court must not allow the case to be submitted to the jury and a contention that the evidence did not make a submissible case should be sustained. *Id.* A mere possibility that a person charged with negligence committed a negligent act is not sufficient. The circumstances in evidence must prove a reasonable *probability* that the person sought to be charged is the one who performed the negligent act, *Lindsay v. Wille,* 348 S.W.2d 1, 5 (Mo.1961), and that the act shown would in the natural (although not necessary or inevitable) course of events result in the injuries complained of. *Carter v. Boy's Club of Greater Kansas City,* 552 S.W.2d 327, 331 (Mo.App.1977).

The evidence adduced at trial on the issue of proximate cause does not meet even these minimal standards. The plaintiff sought to show that defendant's em-

ployee left the tractor running for an extended period of time, which resulted in damage. The evidence, viewed in a light most favorable to the plaintiff, showed that the engine was left running by defendant for at least one hour but there is no evidence to suggest how long it was left running after the machine shop employees left at 4:30 p.m. The evidence showed only that it was moved again, and turned off before plaintiff returned to the jobsite at an unspecified time. Brautigam, the mechanic, was uncertain how long the engine would have to idle before damage resulted. Furthermore, he testified only that extended idling *could* have caused the damage, that "a multitude" of causes were possible, and that he could not tell what the actual cause had been. Where "as between . . . possible causes, the evidence leaves the proximate cause of the injury to speculation and conjecture, plaintiff's case must fail." *Begley v. Connor,* 361 S.W.2d 836, 839 (Mo.1962). The test on causal connection is whether facts show that in the absence of the negligence charged, the injury would not have been sustained. *Gottman v. Norris Construction Co.,* 515 S.W.2d 861, 864 (Mo.App. 1974); *Stevens v. Raney,* 520 S.W.2d 615, 619 (Mo.App.1975); *Schabbing v. Seebaugh,* 395 S.W.2d 256, 260 (Mo.App.1965). Even if the engine *was* left running for an extended period of time, the testimony of Brautigam, the repair shop owner, would not support an inference that the damage would not have occurred but for the long idle time. The trial court properly granted defendant's motion for a directed verdict. There were simply too many links missing in the chain of causation argued by the plaintiff.

■ We also have before us the plaintiff's contention that the trial court erred in sustaining defendant's objections to certain broadly phrased interrogatories, which asked for extensive information concerning defendant's business operations, assets and available business records. Answers to these interrogatories would not have enhanced plaintiff's ability to prove proximate cause, or any other relevant matter. *See* Supreme Court Rule 56.01(b). Our review

shows that the trial court made no error of law in sustaining the objection to these interrogatories. Because a more detailed discussion would have no precedential value, we affirm on this point under Rule 84.16(b).

Judgment affirmed.

SMITH, P.J., and SATZ, J., concur.