**Verma JOHNSON, Plaintiff–Appellant,**

v.

**BI–STATE DEVELOPMENT AGENCY, Defendant–Respondent.**

**No. 72430.**

Supreme Court of Missouri, En Banc.

July 31, 1990.

Marc Wallis, St. Louis, plaintiff-appellant.

Joseph H. Guffey, St. Louis, defendant-respondent.

COVINGTON, Judge.

This is an appeal by Verma Johnson from a judgment sustaining Bi–State Development Agency's ("Bi–State") motion for directed verdict at the close of Ms. Johnson's evidence. The Missouri Court of Appeals, Eastern District, affirmed. This Court granted transfer. *Rule 83.03.* The judgment is reversed and the cause remanded.

On October 16, 1981, Verma Johnson left her job at Shop Towel Service Company in St. Louis, Missouri, and boarded the Bi–State Gravois bus at Grand Avenue. She exited the bus at Sixth and Lucas Streets where she intended to take another bus to her home in East St. Louis, Illinois. She walked around in front of the bus toward the other side of the street. She checked the traffic and then looked up to the driver of the bus. The bus driver looked in his rear view mirror then motioned with his hand to cross the street. Ms. Johnson checked the traffic once more, but, as she stepped from in front of the bus, she was struck by an automobile operated by Linda Martin. The bus driver did not warn that an automobile was approaching.

Ms. Johnson sued both Bi–State and Linda Martin. The driver was deceased at the time Ms. Johnson initiated litigation. Ms. Johnson settled with Ms. Martin who was then dismissed as a party. At the close of plaintiff's evidence, the trial court granted Bi–State's motion for directed verdict on grounds of sovereign immunity and Ms. Johnson's failure to present evidence that the action taken by the bus driver was within his scope of employment.

 Ms. Johnson first claims the trial court erred in directing a verdict on the ground of sovereign immunity. She is correct. A brief recitation of the history of the evolution of sovereign immunity and its exceptions is appropriate in the context of the resolution of the question presented.

At common law, a municipal corporation was immune from liability for performance of governmental functions but liable for tortious acts committed in performance of proprietary functions. *See Cook v. Kansas City,* 358 Mo. 296, 214 S.W.2d 430, 432 (1948); *State ex rel. Askew v. Kopp,* 330 S.W.2d 882, 889–90 (Mo.1960); *State ex rel. Allen v. Barker,* 581 S.W.2d 818, 825 (Mo. banc 1979). A public entity is deprived of immunity when performing proprietary functions. *Beiser v. Parkway School District,* 589 S.W.2d 277, 280 (Mo. banc 1979), citing, *St. Joseph Light & Power Co. v. Kaw Valley Tunneling Inc., et al.,* 589 S.W.2d 260 (Mo. banc 1979). The nature of the activity performed determines the capacity in which the public entity acts. *St. Joseph Light & Power Co.,* 589 S.W.2d at 267. A governmental duty is one which is performed for the common good of all. A duty will be deemed proprietary if it is performed for the special benefit or profit of the public entity acting as a corporate entity. *Dallas v. City of St. Louis,* 338 S.W.2d 39, 44 (Mo.1960).

In *Jones v. State Highway Comm'n,* 557 S.W.2d 225 (Mo. banc 1977), this Court abolished sovereign immunity. The legislature responded to *Jones* in 1978 by enacting § 537.600, RSMo Supp.1989 [1], which reinstates sovereign or governmental tort immunity as it existed in Missouri prior to September 12, 1977, with two express exceptions, §§ 537.600.1(1) and (2). The governmental-proprietary distinction, thereby, was also resuscitated. *State ex rel. Allen v. Barker,* 581 S.W.2d at 825. Later, in *State ex rel. Trimble v. Ryan,* 745 S.W.2d 672, 675 (Mo. banc 1988), this Court held that Bi–State, as a public entity, was entitled to sovereign or governmental immunity as it existed prior to September 12, 1977, and was not a municipality subject to the governmental-proprietary test.

 In apparent response to *Trimble,* the legislature enacted §§ 537.600.3, *et seq.,* providing that sovereign immunity is waived for the proprietary functions of multi-state compact agencies, operating

1. All statutory references are to RSMo Supp. 1989 unless otherwise stated.

pursuant to the provisions of §§ 70.370 to 70.440, RSMo, including functions such as the operation of motor vehicles involved in the operation of a public transit or public transportation system. § 537.600.4. Bi–State exists and operates its public transportation system solely by authority of §§ 70.370, *et seq.*, RSMo 1986. Ms. Johnson's claim is not defeated by sovereign immunity.

Having determined that sovereign immunity is not a bar to Ms. Johnson's claim, it is then necessary to address the question of whether Ms. Johnson adduced evidence sufficient to show that the bus driver acted within the scope of his employment. Bi–State contends the plaintiff failed to adduce evidence that the act of waving by the bus driver was within his authority and scope of employment. Bi–State can be held liable for the negligence of the driver only upon some application of the principle of *respondeat superior.*

█ Whether the act of waving was within the driver's scope of employment is a question of fact for the jury. Although instances when such an activity comes within the scope of employment of the driver of a motor vehicle may be few, it cannot be said as a matter of law that any act of waving by the driver of a motor vehicle, regardless of the intended purpose, is outside the scope of the driver's employment.

█ In cases involving motor vehicles, Missouri case law affords a rebuttable presumption that the driver of another's vehicle is acting within the course of employment. *Wills v. Townes Cadillac–Oldsmobile, Inc.,* 490 S.W.2d 257, 259–60 (Mo. 1973). The presumption arises by showing that the defendant owned or controlled the motor vehicle and that the driver of the vehicle was in the general employ of the defendant.

The issue, then, is whether the evidence was favorable to the plaintiff and whether reasonable inferences from the evidence were sufficient so that reasonable minds could differ as to whether the Bi–State driver was an employee of Bi–State acting within the scope of his employment.

█ "Direct evidence of the relationship of employer-employee is not required to establish the relationship, but the fact of such a relationship may be established by circumstantial as well as direct evidence." *Smoot v. Marks,* 564 S.W.2d 231, 236 (Mo. App.1978). In *Brison v. O'Brien,* 645 S.W.2d 142 (Mo.App.1982), for example, the court found very minimal circumstantial evidence of an employer-employee relationship sufficient to defeat a motion for directed verdict. In *Brison,* a man wearing a blue fishing hat who worked and ate with the defendant's crew was seen operating a tractor owned by plaintiff. The tractor was left idling for an undetermined amount of time and extensive engine damage resulted. The court of appeals held that the jury could have reasonably inferred an employment relationship between defendant and the man in the blue fishing hat from these facts, even if the alleged employee was not identified by name. *Id.* at 145. Generally, the relationship of principal-agent or employer-employee is a question of fact to be determined by the jury when, from the evidence adduced on the question, there may be a fair difference of opinion as to the existence of the relationship. *Smoot,* 564 S.W.2d at 236. The employment relation is a question of law for the court only where material facts from which it is to be inferred are not in dispute and only one reasonable conclusion can be drawn from the material facts. *Id.*

█ The evidence adduced in this case is scant, making the case a very close one. Ms. Johnson's testimony was that the "Gravois" bus, on which she was a passenger, stopped at Sixth and Lucas Streets to allow the passengers to exit the bus. Ms. Johnson exited the bus and went around in front of the bus to cross the street to wait for another bus to take her home. Ms. Johnson looked at the driver of the bus. He looked at her, looked up at his rear view mirror, and waved toward the other side of

the street. The driver was wearing a blue Bi–State uniform. By offer of proof, Ms. Johnson testified that she had been a passenger on the bus for four or five years prior to the date of the accident, that she had disembarked at the stop at Lucas and Sixth Streets on prior occasions, that the same bus driver had driven the bus on prior occasions and had made the same waving motion to her when she crossed in front of the bus to get to her next bus. She also testified that other drivers of the bus had made the same motion to her on prior occasions.

Considering the testimony in the light most favorable to Ms. Johnson and accepting all favorable, reasonable inferences to be drawn from the evidence, the jury could infer that the driver of the bus was an employee of Bi–State. Whether the jury could infer that the bus being driven by the driver was Bi–State's bus is a separate question under the presumption. Ms. Johnson referred throughout her testimony to the bus as being the "Gravois" bus. Ownership has never been disputed. Bi–State's Statement of Facts, in its brief on appeal, refers to the bus as Bi–State's bus. Although minimal, the evidence creates a presumption that the driver was, at the time of the occurrence, acting in the course of his employment. *Wills*, 490 S.W.2d at 259–60. The presumption disappears only when the defendant introduces substantial controverting evidence, *id.*, which, of course, Bi–State is yet without opportunity to attempt as a consequence of the directed verdict in its favor at the close of Ms. Johnson's evidence. The trial court erred in directing a verdict on the ground that Ms. Johnson failed to show that the driver was acting within the scope of his employment.

As a final avenue of response, Bi–State alleges that under *Sanford v. Bi–State Development Agency*, 705 S.W.2d 572, 575 (Mo.App.1986), Bi–State ceased to be responsible for Ms. Johnson's safety once she alighted from the bus in a safe place. Bi–State's reliance on *Sanford* is misplaced, for the holding of *Sanford* rests squarely upon the plaintiff's status as a passenger. In the present case, Ms. Johnson explicitly brought her action as a pedestrian, not a passenger, so her prior status as a Bi–State passenger has no bearing on this suit.

Bi–State also claims that Ms. Johnson's conduct was the intervening proximate cause of her injuries as a matter of law. Bi–State claims that Ms. Johnson's independent intervening act of looking and then stepping out to cross the street was the proximate cause of her injuries. In the present case, the question of whether the facts show that, in the absence of the negligence charged, the injury would not have been sustained, is one for the jury.

It is the view of this Court that the testimony in this case presented jury questions as to the liability of Bi–State and to the comparative fault of Verma Johnson. The judgment is reversed and the cause remanded for further proceedings.

BLACKMAR, C.J., ROBERTSON, RENDLEN, HIGGINS and HOLSTEIN, JJ., and PARRISH, Special Judge, concur.

BILLINGS, J., not sitting.