Cynthia RAY and Lonnie Ray, Appellants,

v.

Peggy GABBARD, Roy Gabbard, and Jackie Ann Gabbard, By and Through her parent and next friend, Respondents,

and

Darla Schieber, Respondent.

No. WD 48551.

Missouri Court of Appeals, Western District.

Nov. 1, 1994.

James W. Tippin, Kansas City, for appellants.

Patrick B. Starke, Blue Springs, for respondents Gabbards.

Before KENNEDY, P.J., and BRECKENRIDGE and SPINDEN, JJ.

KENNEDY, Presiding Judge.

This is an appeal by defendant homeowners Lonnie Ray and Cynthia Ray from an order granting a new trial, after a jury trial and verdict in their favor. The plaintiffs were Jackie Gabbard, a child when she was injured, and her parents, Roy and Peggy Gabbard. Their claims grew out of Jackie's injuries in a fall from the stairs at the Rays' house.

The Rays filed a third-party petition bringing in Darla Schieber as third-party defendant. Rule 52.11(a). The jury returned verdicts finding against the defendants Ray on their third-party petition, and finding no fault either on the part of defendants Cynthia and Lonnie Ray or on the part of third-party defendant Darla Schieber.

Plaintiffs filed a motion for a new trial on the sole ground the verdict was against the weight of the evidence. The trial court granted the motion for new trial on that ground, and defendants Cynthia Ray and Lonnie Ray have appealed. They say the court erred in failing to grant their pre-trial motion for summary judgment against third-party defendant Darla Schieber; in denying their motion for a directed verdict against plaintiffs at the close of all the evidence; and in granting the new trial on the ground that the verdict was against the weight of the evidence.

The facts as shown by the evidence are as follows:

Plaintiff Jackie Ann Gabbard was three and one-half years old. On the evening of her injury (April 3, 1992), her parents, who were plaintiffs Roy and Peggy Gabbard, had left Jackie with her aunt, Darla Schieber, at Darla's residence. Darla, who was Peggy Gabbard's sister, had often kept Jackie before. Darla had in her care that evening six children, including her own four children, a four-year-old girl named Tracy, and Jackie. Darla and the six children went to the Ray house, and went in. Darla was related to defendant Lonnie Ray and was a frequent visitor to the Ray house. Defendant Lonnie Ray acknowledged she had a standing invitation to enter the house.

The Rays' was a hospitable house. They had adapted the basement to recreational purposes. They had installed a pool table there, and kept children's toys there. Children and adults freely came into the house and down the stairs into the recreation area. Children regularly went up and down the stairs who were as young as nine months, up to the age of 15 or 16 years.

Three-and-a-half-year-old Jackie was descending these stairs, followed by four-year-old Tracy, and, behind Tracy, Darla herself. Jackie fell to the right, off the fourth step from the bottom, on to the concrete basement floor. She sustained injuries to her head and shoulder.

This staircase furnished the only access to the basement area. The only light on the stairs was from the kitchen. The light cast shadows and obscured areas of the stairway. The stairs were less than three feet in width, narrower than regular stairs. There was no handrail on the left; there had been one there when the Rays moved into this house in 1990, but they had removed it and had not replaced it. There was a handrail on the right, the side from which Jackie fell. The stairs were steep. They descended at a 45-degree decline, when, according to an expert witness, frequently used stairs should not slope more than 35 degrees. The steepness of the stairs was caused by shallow horizontal treads—eight inches, instead of the standard 11 inches. The risers varied in height more than the permissible three-eighths inch. The handrail was a single rail, which was 36 inches in height at the top of the stairs, and was 42 inches in height (measured from the stair treads) at the bottom. The handrail was supported by a single standard at the top and one at the bottom. There was no guard in the opening between the two standards, the handrail and the stairs; it was completely open. Lonnie frequently cautioned people who used the stairs to take care, and to hang on to their children as they negotiated the stairs.

■ Defendants argue that the court erred in granting a new trial on the ground the verdict was against the weight of the evidence. The court has the discretionary power to grant one new trial (but only one, see Rule 78.02) on the ground the verdict was against the weight of the evidence. Rule 78.02; *Torre Specialties, Inc. v. Coates*, 832 S.W.2d 914, 918 (Mo.App.W.D.1992); *Landis v. Sumner Mfg. Co.*, 750 S.W.2d 466, 470 (Mo.App.W.D.1988). While the court has never said the trial court's discretion is absolute in granting a new trial on the ground the verdict is against the weight of the evidence, no case has been cited or found in which the court has reversed the granting of a motion

for new trial on this ground. We will content ourselves to say again that the trial court has the widest discretion to grant a new trial on this ground, *See, e.g., Robertson v. Cameron Mut. Ins. Co.,* 855 S.W.2d 442, 446 (Mo.App. W.D.1993); *Wiedower v. ACF Indus., Inc.,* 763 S.W.2d 333, 336 (Mo.App.E.D.1988), and we find no abuse of discretion here.

■ Defendants' contention that the court erred in granting a new trial because the verdict was against the weight of the evidence raises the question whether the plaintiffs made a submissible case against defendants. *Cunningham v. Bellerive Hotel, Inc.,* 490 S.W.2d 104, 107 (Mo.1973); *Resco Constr. Co. v. Dawson Cabinet Co.,* 656 S.W.2d 324, 326 (Mo.App.S.D.1983). If the plaintiffs made no submissible case against defendants, then defendants are entitled to have the order granting the motion for new trial reversed and the verdict and judgment reinstated.

■ The plaintiffs made a submissible case against defendants Ray. Jackie, as a social guest, was a licensee. *See, Salanski v. Enright,* 452 S.W.2d 143 (Mo.1970); *Wells v. Goforth,* 443 S.W.2d 155, 156 (Mo. banc 1969) (overruled in part on other grounds); *Wolfson v. Chelist,* 284 S.W.2d 447 (Mo.1955); *Harriman v. Smith,* 697 S.W.2d 219, 221 (Mo.App.E.D.1985); *Brown v. Lesh,* 604 S.W.2d 636 (Mo.App.E.D.1980). The defendants' duty toward her is stated as follows at Restatement (First) of Torts, Sec. 342 (1934) (adopted by *Wells,* 443 S.W.2d at 158):

A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has to believe that they will not discover the condition or realize the risk, and

(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

(i) to make the condition reasonably safe, or

(ii) to warn them of the condition and the risk involved therein.

Defendants do not argue so much that the stairs were safe, but rather that the condition was so open and obvious that a person using, or considering the use of, the stairs, should as a matter of law, not be able to hold his host liable for injuries he might sustain in the use of the stairs. They cite *Harris v. Niehaus,* 857 S.W.2d 222 (Mo. banc 1993), but we do not think it is applicable. In *Harris,* the court held that the possessor of lands (in this case, private streets) were not liable for the wrongful death of three children—six, four and three years of age—who had been left unattended in the car, while their mother inspected a roofing job on a nearby residence. The car rolled down the street into a lake and the children drowned.

The court as a matter of law acquitted the possessor of the streets of liability. Said the court:

The critical question, therefore, is whether the trustees could *reasonably rely* on its invitees to protect themselves from this danger or whether the trustees *should have expected* that drivers and occupants of cars using Lakepoint Drive would not appreciate the danger or would be unable to keep their cars from careening into the lake....

Regardless of whether the invitees are children or adults, however, the trustees could reasonably anticipate that any person operating a vehicle on the subdivision's roads (1) will be licensed to drive, (2) will possess the minimal amount of skill necessary to operate the vehicle safely, and (3) will have acquired sufficient life experience to know that automobiles will roll downhill and should not be driven into lakes. The defendants could also reasonably anticipate that anyone intending to leave children unattended in a vehicle parked along Lakepoint Drive will take effective measures to ensure that the car is secured from the operation of the laws of gravity.

*Id.* at 226, 227.

In this case, though, small children frequently went up and down the stairs. The kind of fall plaintiff Jackie Gabbard suffered here was foreseeable, or so the jury could find. An open and obvious condition might

be recognized by an adult as dangerous, but might not be recognized by a small child as dangerous. As noted in Restatement (First) of Torts, Sec. 342 cmt. b:

> "On the other hand, the possessor should realize that the fact that a dangerous condition is open to the perception of children licensees may not be enough to entitle him to assume that they will appreciate the full extent of the risk involved therein."

 One of the grounds for defendants' appeal from the order granting a new trial is the alleged error of the trial court in denying defendants' pre-trial motion for summary judgment against Darla Schieber on defendants' third-party petition. Defendants' submission of this claim shows that the aim of the third-party petition is to fix an apportionment of fault against Darla Schieber.

The jury's verdict was against defendants on their third-party petition against Darla Schieber. In another verdict, in which it found no fault on the part of defendants, it also found no fault on the part of Darla Schieber.

Perhaps the most direct way to dispose of this allegation of error, of the several ways that suggest themselves, is to point out that any error which affects only the third-party claim of the defendants Ray against third-party defendant Darla Schieber has no relevance to this appeal from the order granting a new trial to plaintiffs. Defendants Ray did not file a motion for a new trial on their third-party petition against Darla Schieber, nor did they appeal from the judgment in her favor.

The order granting plaintiffs' motion for a new trial is affirmed.

All concur.