Colette PETERSON and Russell Peterson, Appellants,

v.

SUMMIT FITNESS, INC. and Carolyn Boyd, Respondents.

No. WD 50482.

Missouri Court of Appeals, Western District.

March 26, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1996.

Application to Transfer Denied May 28, 1996.

929

John C. Bragg, Grandview, for appellants.

Harold L. Lotven, Kansas City, for respondents.

Before SPINDEN, P.J., and BRECKENRIDGE and SMART, JJ.

BRECKENRIDGE, Judge.

Colette Peterson and her father, Russell Peterson, sued Summit Fitness, Inc., and Carolyn Boyd, Colette Peterson's mother, for injuries Colette Peterson sustained while swimming at Summit Fitness's pool. The trial court directed a verdict in favor of the defendants at the close of the Petersons' evidence. The Petersons then filed a motion for a new trial which was denied by the trial court.

The Petersons present three points on appeal, contending that the trial court erred in 1) sustaining a directed verdict in favor of Summit Fitness in that they made a submissible case that the pool at Summit Fitness was an unreasonably dangerous condition; and 2) in directing a verdict in favor of Ms. Boyd, because they made a submissible case that she violated the reasonable parent standard by failing to warn Colette of the dangerous condition of the pool and by failing to properly supervise her.

The judgment of the trial court is affirmed in part and reversed in part, and the case is remanded to the trial court for further proceedings.

When determining whether the plaintiff has made a submissible case, this court views the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff. *Shaffner v. Farmers Mut. Fire Ins. Co.*, 859 S.W.2d 902, 904 (Mo.App.1993). A submissible case is made when "every fact essential for liability is

predicated on legal and substantial evidence...." *Waggoner v. Mercedes Benz of N. America, Inc.,* 879 S.W.2d 692, 694 (Mo. App.1994). If the evidence, viewed in the light most favorable to the plaintiff, is so strongly against the plaintiff that there is no room for reasonable jurors to differ, the motion for directed verdict should be sustained. *Id.*

Colette Peterson's parents are divorced and she is in the custody of her father, Russell Peterson. On Saturday, March 10, 1990, while exercising visitation with her mother, Colette accompanied her mother, stepfather, Tom Boyd, and stepsister, Alicia, to the Summit Fitness Center, where Ms. Boyd was a member. Colette had never been to the fitness center before.

On Saturdays, the fitness center had an open swim for children in its "lap pool." The pool was not a part of the original construction of the fitness center, but was added a year later. It was constructed inside an existing room within the fitness center. Because the room has a concrete floor, the decision was made to build the pool from the floor up. Photographs of the pool admitted into evidence show that its surface area encompasses approximately three-fourths of the room. Although neither party provided specific dimensions of the pool, it is evident from photographs that the pool's length was over thirty feet and its width at least fifteen feet.

The pool is rectangular and rises four feet off the floor. A deck surrounds three sides of the pool, leaving the remaining side unprotected. This side, one of the pool's longer edges, has no railing, platform or other protective device. Rather, there is merely a four foot wall, approximately one foot wide, extending to the concrete floor below. The top of this wall has a "brushed concrete" surface, but no other adhesive or nonstick material.

Visitors enter the pool area from the side of the pool which has the exposed wall. The pool is set against the back part of the room, leaving a bare concrete floor in front of the pool. The sole entrance to the pool itself is a series of steps which are located on the right side of the pool. Adjoining this room is another which has exercise equipment and a track. Glass panels separate the two rooms, permitting a person in the adjoining room to observe the pool, but preventing communication between the two rooms.

Ms. Boyd accompanied Colette and Alicia to the pool and told them to "be careful." The girls were the only two people in the pool; no lifeguard was on duty. Both Colette and Alicia, ages nine and eleven, respectively, knew how to swim. After leaving the girls in the pool, Ms. Boyd got on a stationary bike in the adjoining room. The bike was one of several that were pointed away from the pool area at a forty-five degree angle. Persons using the bikes could see the pool only if they were "riding completely turned around sideways."

Several signs inside the fitness center stated that parental supervision was required for young swimmers. As Ms. Boyd began to ride the stationary bike, she was approached by Bruce Gentry, the chief executive officer of Summit Fitness. Mr. Gentry informed Ms. Boyd that the rules of Summit Fitness prohibited children from using the pool without parental supervision. He told her that parents had to be in the "pool area" with their children. Ms. Boyd replied that she thought her children were old enough to be without supervision and that she could see them from where she was. After Mr. Gentry informed her three times of the rules and received a negative response, he went back to the front desk to speak to his brother about what should be done.

During this time, Colette and Alicia were swimming in the pool. Colette testified that there was no "horseplay", "splashing", "pushing or shoving"; the two girls were "just swimming." They had been swimming for approximately fifteen minutes when Colette decided to swim underwater to one side of the pool. Although Colette had noticed the pool's exposed wall when she had first entered the pool, she forgot which of the longer sides had the drop-off. She thought she was going to the side which had the deck. As she swam underwater, she kept her eyes closed, because she did not want to get chlorine in them.

When Colette reached the wall, she stopped, stood up and took a breath. Then, with her eyes still closed, she tried to push herself up on the edge of the pool and turn around, so that she could sit on the edge. "[A]ll in one motion," she put her hands on top of the wall, pulled herself up, and fell "head first" over the wall to the concrete floor below, breaking a tooth and suffering injuries to her wrists, lip and jaw.

The Petersons sued Summit Fitness, alleging that the pool at the fitness center was an unreasonably dangerous condition and that Summit Fitness had failed to exercise reasonable care to protect Colette from that condition. Summit Fitness filed a third-party petition against Ms. Boyd, seeking contribution from her for negligent supervision. The Petersons then filed an amended petition which added a claim against Ms. Boyd. The Petersons alleged that Ms. Boyd was negligent for failing to protect and warn Colette of the dangerous condition of the pool. Specifically, the Petersons alleged that Ms. Boyd failed to: 1) warn Colette of the dangerous condition of the pool; 2) advise Colette not to attempt to sit on the edge of the pool; and 3) position herself so as to prevent Colette from attempting to sit on the edge of the pool.

At trial, both defendants moved for a directed verdict at the close of the Petersons' evidence. The trial court entered an order sustaining the defendants' motions and dismissing without prejudice Summit Fitness's third-party petition against Ms. Boyd. The Petersons filed a motion for a new trial which was denied by the court. This appeal followed.

The Petersons' first point contends the trial court erred in sustaining Summit Fitness's motion for directed verdict at the close of their evidence. The Petersons contend that they made a submissible case that the pool at Summit Fitness posed an unreasonable risk of harm to Colette and that Summit

Fitness failed to exercise reasonable care to protect Colette from the dangerous condition of the pool.

The standard of care owed by a possessor of land is dependant upon the status of the injured party. *Carter v. Kinney*, 896 S.W.2d 926, 928 (Mo. banc 1995). As a business invitee, Colette was entitled to reasonable and ordinary care by Summit Fitness to make its premises safe. *Luthy v. Denny's, Inc.*, 782 S.W.2d 661, 662 (Mo.App. 1989).

In *Harris v. Niehaus*, 857 S.W.2d 222, 225–26 (Mo. banc 1993), the Missouri Supreme Court set out the elements of a negligence cause of action by an invitee for injuries arising from a condition of the land. A possessor of land is liable to an invitee only if the possessor:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Id. (quoting* Restatement (Second) of Torts, § 343 (1965)).

The first element was met by the Petersons. The condition of the pool was known by Mr. Gentry. He testified that he was aware that one edge of the pool had a four-foot drop off and, if anyone fell off the wall, the person could get hurt. The question of whether Summit Fitness should have realized that the condition of the pool was "unreasonably dangerous" to invitees was subject to dispute and for the jury to determine.[1] *Id.* at 226.

The Petersons also presented evidence which, if believed, satisfies the third

---

1. Although the trial court did not indicate the basis of its order for a directed verdict, counsel for Summit Fitness and Ms. Boyd argued at trial that expert testimony was required on the issue of whether the pool was "unreasonably dangerous." If a subject is one within the experience or knowledge of lay persons, expert testimony is not necessary and is superfluous because the fact finder is capable of deciding the issue without expert testimony. *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 818 (Mo.App. 1992). Under the facts of this case, a lay person was capable of viewing the pictures of the pool and determining whether the four-foot drop off along one side of the pool was "unreasonably dangerous."

component, that Summit Fitness failed to exercise reasonable care to protect swimmers from the danger of falling off the wall of the pool. Mr. Gentry testified that it was "against the rules" for someone to sit on the edge of the pool which had the four-foot drop off. He said that he would warn swimmers not to sit on that edge when he saw them "even around that area of the wall." However, no signs were posted to warn swimmers about this, nor was there any effort to verbally inform swimmers who were new members of the club. In addition, no protective device such as a deck was built to safeguard the edge of the pool. Whether Mr. Gentry's three admonitions to Ms. Boyd that parental supervision was required for young swimmers, and the posting of several signs throughout the fitness center to that effect, constituted reasonable care to protect Colette Peterson from danger was an issue of fact. *Id.*

 The second element of § 343 requires a more extensive analysis. In general, a possessor of land does not have a duty to protect invitees against conditions that are open and obvious as a matter of law. *Id.* The exception to this rule is where "the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (*quoting* Restatement (Second) of Torts, § 343A(1) (1965)). A condition is open and obvious if invitees should reasonably be expected to discover it. *Id.*

 Here, the condition of the pool was open and obvious as a matter of law. Anyone entering the room which housed the pool saw the pool from the side which had the exposed wall. The wall stretched some thirty feet and rose four feet off the ground. Summit Fitness could reasonably expect its invitees to discover this condition. *Id.* The issue then is whether Summit Fitness should have anticipated the harm despite the obvious condition of the wall.

The Petersons contend its evidence demonstrates that Summit Fitness had reason to expect that Colette would fail to protect herself against the harm created by the exposed wall. The Petersons argue that Summit Fitness should have expected that a nine-year-old child would either forget about the wall

or that her attention would be diverted due to swimming underwater with her eyes closed. Because the risk of harm should have been anticipated by Summit Fitness, the Petersons contend they made a submissible case.

In response, Summit Fitness cites *Harris* for the proposition that "where the danger is open and obvious as a matter of law and the risk of harm exists only if the plaintiff fails to exercise due care, the case is not submissible to the jury...." *Id.* at 227. In *Harris,* the plaintiff parked her car on a steep hill, leaving her three children inside the car. The car rolled down the hill into a lake, and the children drowned. The plaintiff sued the landowners, contending that they failed to warn her about the danger of parking a car on the hill. After the jury returned a verdict in favor of the plaintiff, the landowners appealed. The Supreme Court of Missouri reversed, holding that the landowners owed no duty to the plaintiff. *Id.* at 228. The Court emphasized that landowners should reasonably expect invitees to take precautions to avoid harm from open and obvious conditions. *Id.* at 226.

Summit Fitness argues that the Petersons failed to make a submissible case under the standard set out in *Harris,* because the risk of harm existed only due to Colette's failure to exercise due care. According to Summit Fitness, Colette's admission that she was aware of the open wall when she entered the pool demonstrates that she "could exercise ordinary perception, intelligence and judgment." Her conscious choice to swim to the open wall and attempt to sit on it, rather than swimming to a side with a platform, shows that she failed to exercise reasonable care by taking the minimal steps necessary to avoid her fall.

 Acceptance of Summit Fitness's construction of *Harris* would insulate possessors of land from liability if a condition was open and obvious and the plaintiff failed to exercise reasonable care. The Court in *Harris* did not intend to resurrect the principles of contributory negligence in the context of open and obvious conditions. *Id.* at 229–30 (concurring opinion of Benton). Nor did it

intend to eliminate the landowner's expectations from the determination of whether a duty existed. The Court held that the defendant is entitled to judgment as a matter of law if the risk of harm from the open and obvious condition exists "only" due to the plaintiff's failure to exercise due care. *Id.* at 227. Under these circumstances, the risk of harm is unanticipated because it is created not by the dangerous condition itself but by the plaintiff's failure to exercise due care. Two opinions which apply the rule in *Harris* demonstrate this distinction.

In *Smoot v. Vanderford,* 895 S.W.2d 233, 234 (Mo.App.1995), the plaintiff was injured by falling off a ladder while trimming tree limbs. The plaintiff had placed a ladder against the limb he intended to trim and put it so far from the trunk that the limb sprung upward when the severed portion was released. The plaintiff sued the landowners, contending that they created an "unreasonable risk" by telling him to trim tree limbs from an extension ladder with a chain saw. The jury returned a verdict in favor of the plaintiff and the trial court entered judgment accordingly.

On appeal, the Southern District of this court reversed the judgment of the trial court. *Id.* at 241. Citing *Harris,* the court noted that the plaintiff's placement of the ladder on the limb he intended to cut "subjected himself to a danger which he alone created and which was open and obvious as a matter of law." *Id.* Because the risk of harm existed solely due to the plaintiff's failure to exercise due care, the case was not submissible to the jury. *Id.*

The opposite conclusion was reached in *Privitera v. Coastal Mart, Inc.,* 908 S.W.2d 779 (Mo.App.1995). There, the plaintiff went to a gas station to purchase gas. While she was walking across the gas station lot to pay the cashier, she caught one of her high-heeled shoes in a small hole in the concrete and fell. She sued the gas station for negligence and obtained a jury verdict in her favor. The gas station appealed, contending the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict. The gas station argued that the condition of the lot, which had numerous pop-outs on its surface, was open and obvious as a matter of law.

Applying *Harris,* this court held that the gas station "should have anticipated the harm despite the fact that the pop-outs were visible." *Id.* at 781. The court noted that customers such as the plaintiff had to walk across the lot to pay the cashier and "could expect it would be safe for this reasonable use." *Id.* The court concluded that the issue of fault was properly submitted to the jury. *Id.* at 782.

Just as the landowner in *Privitera* should have anticipated harm from pop-outs in the surface of a gas station lot, so should Summit Fitness have anticipated harm from an exposed wall of a swimming pool, or so a jury could find. Mr. Gentry testified, and common sense suggests, that ordinary use of a swimming pool includes sitting on its edges. Section 343A of the Restatement (Second) of Torts requires only that the harm be anticipated, not the precise details of how the harm occurred. Photographs of the pool in the record on appeal are persuasive evidence that the condition of the pool was such that harm could be anticipated from ordinary use of the pool.

The expectation of harm is even greater when the landowner is aware that children will be exposed to the dangerous condition. *Ray v. Gabbard,* 886 S.W.2d 696, 698 (Mo.App.1994). In *Ray,* a three-and-a-half-year-old child suffered injuries after falling off a staircase at the defendants' home. *Id.* at 697. The jury entered a verdict in favor of the defendants. In affirming the trial court's order granting the Petersons' motion for a new trial, this court emphasized the different expectations required of landowners when children are involved. Knowledge that children used the staircase, coupled with a child's inability to recognize dangerous conditions, meant that a jury could have found that the fall was foreseeable. *Id.* at 698–99.

Although *Ray* dealt with the degree of care owed by possessors of land to licensees, the rule is equally applicable to invitees. The Restatement (Second) of Torts, § 343B, comment b, states that when the child is an

invitee the possessor of land is "obligated to anticipate and take into account [the child's] propensities to inquire into or to meddle with conditions which he finds on the land, his inattention, and his inability to understand or appreciate the danger, or to protect himself against it." The reason for affording children extra protection is that "children cannot and do not ordinarily exercise the same degree of prudence and care for their own safety as adults." *Bronson v. Kansas City*, 323 S.W.2d 526, 531 (Mo.App.1959).

■ At the time that Colette was injured, the pool was designated for use by children. Indeed, Summit Fitness had an "open swim" for children every Saturday and Sunday. Summit Fitness therefore could expect that children would use the pool. There is evidence from which a jury could find that Summit Fitness could also anticipate the young swimmers' inattention and inability to protect themselves from the danger of the exposed wall. The Petersons met the second element under § 343 by presenting substantial evidence that Summit Fitness should have anticipated harm from the condition of the pool, even though the condition was open and obvious as a matter of law. The Petersons made a submissible case against Summit Fitness by presenting substantial evidence on each element of § 343.

The Petersons' second and third points pertain to the trial court's directing a verdict against them on their claim against Ms. Boyd. The Petersons' second point alleges that they made a submissible case that Ms. Boyd violated the reasonable parent standard by failing to protect Colette or warn her of the dangerous condition of the pool. Their third point asserts that Carolyn Boyd was not entitled to a directed verdict on the basis of parental immunity. This court will first address the Petersons' third point.

In *Hartman by Hartman v. Hartman*, 821 S.W.2d 852, 858 (Mo. banc 1991), the Missouri Supreme Court abrogated the doctrine of parental immunity. The Court limited the application of its decision to:

cases pending in the trial court in which a claim challenging and seeking the overturn of parental immunity doctrine has been timely raised as of the date of issuance of

this opinion as well as to those cases in which appealable orders have been entered by the trial court and in which the aggrieved party (or parties) has preserved such issue in a timely manner for appellate review as of the date of issuance of this opinion and to causes of action that arise after the date of issuance of this opinion.

*Id.*

Colette was injured on March 10, 1990. On September 13, 1991, the Petersons filed suit against Summit Fitness, contending that it negligently failed to warn Colette about or protect her from the unreasonably dangerous condition of the pool. On October 28, 1991, Summit Fitness filed a third-party petition against Ms. Boyd and Tom Boyd, Colette's stepfather, for negligent supervision. On December 19, 1992, *Hartman* abolished parental immunity. *Id.* The Petersons filed an amended petition on March 16, 1993, which included a claim against Ms. Boyd. On April 12, 1993, Ms. Boyd filed an answer to the amended petition, denying liability on the basis of parental immunity.

The parties dispute whether the third-party petition filed by Summit Fitness constitutes a "claim challenging and seeking the overturn of parental immunity doctrine" within the meaning of *Hartman*. Ms. Boyd argues that the Petersons cannot "ride the coattails" of Summit Fitness to satisfy the requirements of *Hartman*. Ms. Boyd contends parental immunity bars the Petersons' claim, because their claim against her was not filed until after the *Hartman* decision.

Before *Hartman*, parental immunity protected parents not only from direct actions brought by their minor children but also from claims for contribution brought by third parties. *Teeter v. Mo. Highway and Transp. Com'n*, 891 S.W.2d 817, 820 n. 5 (Mo. banc 1995); *Kendall v. Sears, Roebuck and Co.*, 634 S.W.2d 176, 179 (Mo. banc 1982). The Court's decision in *Hartman* allowed third parties to bring claims for contribution against parents for negligent acts towards their children. *Teeter*, 891 S.W.2d at 820 n. 5; *Church v. Moon Freight Lines, Inc.*, 791 F.Supp. 792, 793 (E.D.Mo.1992).

*Hartman* does not require a litigant to specifically allege that he is challenging the parental immunity doctrine in order to timely raise the issue. *Corwin by and through Wolfe v. Coleman Co.*, 879 S.W.2d 602, 608 (Mo.App.1994). The mere filing of a negligence claim against a parent for actions taken in regards to his unemancipated child constitutes a "challenge" to the doctrine. *Id.* Thus, Summit Fitness's third-party petition, filed October 28, 1991, constituted a timely challenge to the doctrine of parental immunity.

*Hartman* does not limit its applicability to *parties* which timely raise the issue, but to "cases" in which a claim "has been timely raised." *Hartman*, 821 S.W.2d at 858. Because Summit Fitness's third-party petition timely raised the issue of the viability of the parental immunity doctrine, that doctrine does not apply in this case. The next issue is whether the Petersons made a submissible case against Ms. Boyd for negligently failing to warn or protect Colette from the dangers of the exposed wall of the pool.

In any suit for negligence, the plaintiff must establish that the defendant had a duty to the plaintiff, that this duty was breached, and that the breach caused the plaintiff's injuries. *Martin v. City of Washington*, 848 S.W.2d 487, 493 (Mo. banc 1993). The Missouri Supreme Court in *Hartman* adopted the "reasonable parent standard" for negligence suits brought by unemancipated minor children against their parents. *Hartman*, 821 S.W.2d at 858. The reasonable parent standard was first embraced by the California Supreme Court in *Gibson v. Gibson*, 3 Cal.3d 914, 92 Cal.Rptr. 288, 479 P.2d 648 (1971). "The standard to be applied is the traditional one of reasonableness, but viewed in light of the parental role." *Gibson*, 92 Cal.Rptr. at 293, 479 P.2d at 653.

By adopting the reasonable parent standard, the Supreme Court of Missouri recognized that parents must be afforded discretion in carrying out their parental duties, yet be subject to scrutiny for "clearly unacceptable conduct...." *Hartman*, 821 S.W.2d at 857, 858. Parents are not expected to live up to idealized expectations. *Id.* at 857. The standard to apply is what an ordinarily reasonable and prudent parent would do under similar circumstances. *Gibson*, 92 Cal.Rptr. at 293, 479 P.2d at 653. "The standard can be managed to ensure that clearly unacceptable conduct giving rise to tort liability may be subjected to scrutiny." *Hartman*, 821 S.W.2d at 858. All relevant facts and circumstances must be examined to determine whether the standard of care has been breached. *Id.* at 857.

This court need not decide whether the Petersons presented substantial evidence that Ms. Boyd failed comport with the reasonable parent standard, because the issue of causation is dispositive. A plaintiff must establish both causation in fact and proximate cause. *Jones v. Ames*, 901 S.W.2d 160, 163 (Mo.App.1995). Causation in fact is established if the plaintiff shows that "but for" the defendant's conduct, the accident would not have occurred. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 860–61 (Mo.1993). The test for proximate cause is whether, after the incident, it is apparent that the injury is the reasonable and probable consequence of the act or omission of the defendant. *Oldaker v. Peters*, 869 S.W.2d 94, 100 (Mo.App.1993). "The mere fact that injury follows negligence does not necessarily create liability; the plaintiff has the burden of showing a causal connection between the submitted negligence and the injury." *Id.*

Causation is generally an issue left to the trier of fact. *Koerber v. Alendo Bldg. Co.*, 846 S.W.2d 729, 731 (Mo.App. 1992). Only "under clear and compelling circumstances" does the matter become one of law for the court. *Id.* (*quoting Lange v. Marshall*, 622 S.W.2d 237, 238 (Mo.App. 1981)). If reasonable minds can differ on whether the defendant's actions caused the plaintiff's injuries, the issue is for the trier of fact and a directed verdict is improper. *Schaffer v. Bess*, 822 S.W.2d 871, 876 (Mo. App.1991). The plaintiff fails to make a submissible case, however, if the evidence connecting the defendant's conduct to the resulting injury "amounts to mere conjecture and speculation...." *Brison v. O'Brien*, 645 S.W.2d 142, 145 (Mo.App.1982). The evidence must show that in the absence of the

negligence alleged, the injury would not have occurred. *Id.* at 146.

The Petersons' claim against Ms. Boyd is based upon her failure to warn Colette of the dangerous condition of the pool and her failure to "be in a position so as to prevent Plaintiff Colette Peterson from attempting to sit on the ledge." The Petersons presented no evidence that either of these omissions caused Colette's fall. Colette testified that she saw the pool's exposed edge when she first entered the pool. It was Colette's failure to remember which side of the pool had the exposed wall, rather than her lack of knowledge concerning the wall's danger, which led to the accident. Therefore, any initial warning given by Ms. Boyd would not have prevented the accident.

In addition, no evidence was introduced to support the inference that had Ms. Boyd been present in the pool area, she could have prevented Colette from attempting to sit on the edge of the pool. Colette testified that she approached the side of the pool with the exposed edge by swimming underwater. When she reached the wall, she stopped, stood up and took a breath. She attempted to push herself up on top of the wall, but instead went over the side "in one motion." To suggest that Ms. Boyd would have perceived the danger in time to voice a warning to Colette, considering the instantaneous nature of Colette's action, would be mere speculation and conjecture. The Petersons thus failed to present substantial evidence that but for Ms. Boyd's alleged breach of her duty as a reasonable parent, Colette's accident would not have occurred.

The directed verdict entered in favor of Summit Fitness is reversed, the directed verdict in favor of Ms. Boyd is affirmed, and the case is remanded to the trial court for further proceedings.

All concur.