Chris GATLEY, Plaintiff–Respondent,

v.

WAL–MART STORES, INC., d/b/a Sam's Club, Defendant–Appellant.

No. 23067.

Missouri Court of Appeals, Southern District, Division Two.

March 24, 2000.

Motion for Rehearing or Transfer Denied April 27, 2000.

Application for Transfer Denied May 30, 2000.

Robert H. Kroenert, Richard A. Lorenzo, Morrison & Hecker LLP, Kansas City, for Appellant.

Timothy B. O'Reilly, Springfield, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

A jury returned a verdict for Chris Gatley ("Plaintiff") in the amount of $25,000 and assessed 25% of the fault to him in his claim for personal injuries against Wal–Mart Stores, Inc. ("Wal–Mart"). Wal–Mart appeals from the judgment entered by the trial court in the amount of $18,750, claiming that the trial court erred in overruling its motion for a directed verdict at the close of all of the evidence, and in giving a verdict directing instruction. We reverse.

Plaintiff fell as he left a Sam's Club store in Springfield, Missouri. The fall occurred about five to ten feet outside the exit door, on the sidewalk where Plaintiff said there was "a lot of traffic in and out" of the store. Plaintiff testified that he fell in a "slick spot," which was a substance that was "clear, maybe brownish tinted," and which he did not see before the fall. The "slick spot" had a streak through it after Plaintiff fell, and he said that his shoe then had a gritty, greasy feel to it. He also said that he believed he had entered the store through the exit door and did not see the spot then. A witness, who helped Plaintiff get up after the fall, also testified that there was a "liquid" where Plaintiff fell.

A "greeter" working just inside the doors, about ten to fifteen feet from where Plaintiff fell, saw him "slip and fall," and went to help him. When she did, she saw a "slippery substance" on the sidewalk where the fall occurred, which she described as a "slippery oil spill, some type of oil," which was "[b]rown to clear," but she was unable to say what the substance was. She could not see the substance on the sidewalk until she got right up to Plaintiff after he fell, she had not gone out the doors that Plaintiff used to exit the store, and she was unable to say how long she had been stationed at the doors prior to the fall. The doors through which Plaintiff left the store were open that day, and there was testimony indicating that the "greeter" would have had a clear view from inside the store to the parking lot, except when that view was obstructed by people coming in and out of the store.

The store also employed "cart attendants" who went in and out of the front doors on what was called a "routine" or "ongoing" basis. Their movement in and out of these doors was also described as a "frequent occurrence." There was no evidence, however, as to when the last of such employees had gone in or out of those doors before the fall.

Wal–Mart's first point relied on is based on the trial court's failure to sustain its motion for directed verdict at the close of all the evidence. It contends that Plaintiff did not make a submissible case because "there was no evidence whatsoever that any [of its employees] had done anything to cause any substance on the sidewalk . . ., or knew of it, and nothing from which the jury could have determined that the condition had existed for a sufficient length of time to charge [Wal–Mart] with constructive notice." It argues that Plaintiff was required to establish actual or constructive knowledge of a dangerous or defective condition, and that in order to

establish constructive notice, the condition must have existed for a significant length of time or the facts must be such that the defendant should have reasonably known of its presence.

■ We review the denial of a motion for directed verdict by reviewing the evidence and all permissible inferences in the light most favorable to the plaintiff and disregard contrary evidence and inferences, and on the evidence so viewed, determine whether the plaintiff made a submissible case. *Judy v. Arkansas Log Homes, Inc.*, 923 S.W.2d 409, 416 (Mo.App. W.D.1996); *Winn–Senter Const. Co. v. Katie Franks, Inc.*, 816 S.W.2d 943, 944 (Mo. App. W.D.1991). We are not required or permitted, however, to supply missing evidence or to give Plaintiff the benefit of unreasonable, speculative, or forced inferences. *Hunt v. National Super Markets, Inc.*, 809 S.W.2d 157, 158 (Mo.App. E.D. 1991). The jury is the sole judge of the credibility of the witnesses and the weight and value of their testimony and may believe or disbelieve any portion of that testimony. *Georgescu v. K Mart Corp.*, 813 S.W.2d 298, 299 (Mo. banc 1991).

In *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778 (Mo. banc 1989), the Missouri Supreme Court made a significant departure from previous slip and fall cases which required evidence that a condition had existed for a sufficient length of time so that a storeowner should have known of the dangerous condition. It described the prior cases as holding that the storeowner is charged with responsibility for known danger but has only minimal duty to anticipate dangers. *Id.* at 780. *Sheil* involved a fall in a self-service store caused by a box of store merchandise in the aisle. There was apparently no showing about how long the box had been there or who placed it on the floor, but the court said that the precise time a condition has existed will not be so important a factor as it once was. *Id.* It said that more important will be the method of merchandising and the nature of the article causing the injury, i.e., whether the

article is of the type held for sale in the area where the fall occurred. *Id.* The Supreme Court held that the plaintiff could make a submissible case, and said that "[c]ustomers who are invited to handle merchandise assume part of the work previously performed by store employees and present an additional danger"; the "box in the aisle was a dangerous, foreseeable condition, and the store had the duty to use due care to protect customers against dangers of this kind." *Id.* at 780–81. It also said, "[w]e conclude that the jury could have found that the plaintiff was injured by a hazard that could have been expected in the store by reason of its method of merchandising and that the defendant was derelict in its duty to take reasonable steps to protect customers against the dangers presented by merchandise in the aisle." *Id.* at 782.

In the instant case, the fall did not occur inside the store, but rather on the sidewalk outside the exit doors. Therefore, this case is more factually similar to another case decided by the Missouri Supreme Court the same day as it decided *Sheil*. In *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784 (Mo. banc 1989), the plaintiff fell on a green liquid on the pavement as she stepped from the sidewalk onto a drive of defendant's parking lot. The substance on the pavement was two to three feet in diameter, was within a few feet of the exit door of defendant's store, and had car tracks and at least ten footprints through it. There, defendant argued, as does Wal–Mart in the instant case, that a submissible case had not been made because there was no evidence that any employee had caused the spot or knew of it, and there was no evidence from which the jury could have determined that the condition existed a sufficient length of time to charge defendant with constructive notice of its existence. *Id.* at 785. The Missouri Supreme Court noted that there were factual distinctions with the *Sheil* case in that the accident in *Moss* did not occur inside a self-service store, and there was no show-

ing that the substance on the pavement consisted of merchandise of a type handled by the store. *Id.* The court said:

> The plaintiff relies solely on the presence of the footprints in the slick, disclaiming at oral argument any assistance from the evidence of tire tracks. This proof is undoubtedly insufficient if we are to follow the numerous cases holding that a period of as short as 20 minutes is not adequate to show constructive notice to the owner. By our *Sheil* opinion, these periods may not be so important as they once were, especially if the evidence shows that employees of the store were regularly in the area in which the accident occurred.

*Id.* at 785–86. The Supreme Court remanded the case to the trial court to give plaintiff an opportunity to develop evidence about employees regularly going into the parking lot to assist customers and to retrieve carts. It said that if that evidence had been received "the jury could possibly have found that the employees of the store would have been able to observe the slick spot before the plaintiff fell." *Id.* at 786. It thus appears that the Supreme Court was saying that, at least as to falls outside the store, it is necessary that the defendant have some opportunity to observe the dangerous condition before the fall for which a plaintiff seeks to hold it responsible.

In the instant case, Wal–Mart relies primarily on *Moss* in arguing that Plaintiff did not make a submissible case. It points out that in *Moss* the court was "unable to say that the plaintiff made a submissible case," reasoning that the "plaintiff's problem [was] that the record [was] barren of evidence about the defendant's method of operation, either as to the store or the parking lot." *Id.* Wal–Mart contends that although there was evidence in the instant case that store employees regularly went out of the store through the exit door to assist customers and retrieve carts (the evidence which the court found lacking in *Moss* ), unlike *Moss,* there was no evidence

from which it could have been inferred that the substance had been on the pavement for any period of time prior to Plaintiff's fall so that it could have been observed by store employees. Wal–Mart also contends that, like *Moss,* there was no evidence that the substance on the sidewalk consisted of merchandise of a type handled by it at Sam's Club.

Plaintiff acknowledges that in order to make a submissible case, he had to show that Wal–Mart knew or, by using ordinary care, could have known of the dangerous condition and failed to use ordinary care to remove it, barricade it, or warn of it, and that he sustained damage as a direct result of such failure, citing *Emery v. Wal–Mart Stores, Inc.,* 976 S.W.2d 439, 443–44 (Mo. banc 1998). Plaintiff narrows the issue in this case by saying that the question is "whether or not the evidence is sufficient to attribute constructive notice to Wal–Mart of the oily substance on which plaintiff fell."

In *Elmore v. Wal–Mart Stores, Inc.,* 812 S.W.2d 178 (Mo.App. E.D.1991), plaintiff fell on a partially opened package of breath mints that were on the floor in the fabric department. The area had been cleaned five minutes before the fall at which time the mints were not observed. Because the mints were not regularly merchandised in the fabric department, the appellate court said that the foreseeability in *Sheil* was not present, and that *Moss* was more in point since the spill in *Moss,* though outside of the store, was not an item regularly merchandised by the store. 812 S.W.2d at 181–82. Significantly, the court said "[w]hile *Sheil* and *Moss* greatly contracted the role of time in determining whether constructive notice exists, they did not eliminate time as a factor." *Id.* at 182. There, the court noted that an employee had cleaned the area five minutes before the fall and the article causing the fall was in an area of the store where it was not regularly sold. It held that the defendant could not, as a matter of law,

have constructive notice of the existence of the dangerous condition. *Id.*

Here, there was no evidence about the exact nature of the substance on the sidewalk, other than the fact that it was a "slick spot" that was "clear, maybe brownish tinted," a "slippery substance" that was "some type of oil" that was "brown to clear," and that it had a gritty, greasy feel to it. Plaintiff argues that these descriptions indicate that the substance was of a type sold by Wal–Mart because the Sam's Club sells motor oil, olive oil and grease. This evidence is, at best, meager. Even assuming that it created an inference that the substance on the sidewalk was of a type sold by Wal–Mart in that store, the substance was located outside the store and not in a department where the store would, under the teaching of *Sheil* and *Elmore*, have constructive notice that it would be spilled.

We view this case as turning on whether there was substantial evidence from which a reasonable trier of fact could have found that Wal–Mart's employees could have, through the exercise of ordinary care, observed the substance on the sidewalk before the fall. Such evidence was clearly of significance to the *Moss* court which noted that the footprints through the substance on the parking lot there indicated that it did not appear suddenly, and that if the jury had heard evidence about employees being in the area regularly, it could have found that they would have been able to observe the spot before plaintiff's fall. 781 S.W.2d at 786. There are two facets to that conclusion, i.e., employees regularly in the area, and a substance which had been there for some period of time which, through ordinary care, could have been observed.

██ It is, therefore, clear that at least outside the store, the defendant must have some reasonable opportunity to discover the condition. In the instant case, the evidence demonstrated that the "greeter" was just inside the door area where Plaintiff went out of the store and saw him fall, but there was no evidence that the substance on the sidewalk was visible from her location. There was no evidence of the area covered by the substance or from which the visibility of the substance from the "greeter['s]" location could be inferred. In fact, the "greeter" testified that she could not see the substance until she stood right over it when she went to Plaintiff's aid.

Plaintiff notes that there was evidence that Wal–Mart's employees regularly went out the exit door to assist customers and retrieve carts. In keeping with *Moss*, Plaintiff seeks to interpret the evidence as indicating that the substance on which he fell was "distinctly noticeable, and therefore, the Wal–Mart employees going in and out of the store would have discovered the substance through the exercise of reasonable care." He argues that the evidence indicated that the substance had been present on the sidewalk "for a significant length of time before the accident," because there was a "streak through the [substance], which could very well have been one or more cart tracks," and Plaintiff said that the substance on his shoe after the fall was "gritty or greasy which supports the inference that the substance was a petroleum product that had been on the [sidewalk] for a sufficient length of time to accumulate dirt, material or 'grit.'" He contends that Wal–Mart "wrongly attributes the streak to [P]laintiff's shoe … when it could be inferred to be a marking similar to those in *Moss* suggesting that the substance did not appear suddenly." Plaintiff, however, testified as follows:

Q. Did you see anything particularly about the spot that made you sure that you had slipped in that spot?

A. Well, I felt my shoes, and there was like a streak through it.

Q. Okay. A streak right through what?

A. Through the spot.

Q. And then what did your shoe feel like?

A. It was kind of greasy, gritty.

Plaintiff, therefore, testified as to only one streak through the substance, and that he had some of the substance on his shoe after the fall. Therefore, attributing the mark in the substance to anything other than Plaintiff's shoe is not a reasonable inference based on the evidence in the record. Unlike *Moss*, there was no evidence here indicating that the substance had been on the sidewalk for any period of time prior to the fall so as to be available for discovery by employees, including those going to and from the parking lot through these doors.

We are aware of cases in which the courts have not focused to a large degree on the length of time that a substance had been on the floor prior to a fall, or the direct ability of an employee to observe the condition. *See Emery v. Wal–Mart Stores, Inc.* 976 S.W.2d 439 (Mo. banc 1998); *Head v. National Super Markets, Inc.* 902 S.W.2d 305 (Mo.App. E.D.1995); *Pilley v. K–Mart Corp.*, 849 S.W.2d 293 (Mo.App. S.D.1993). Each of those cases, however, involved falls within self-service stores where the condition could be considered foreseeable under the precept of *Sheil.*

We are compelled to the conclusion that Plaintiff did not make a submissible case by showing that the substance on the sidewalk where he fell was either foreseeable to Wal–Mart or that it had constructive notice of its presence. Under the facts of this case, Wal–Mart would have no liability for a condition which appeared suddenly before Plaintiff's fall that it could either not reasonably be held to foresee or which its employees did not have a reasonable opportunity to observe and correct. Because we reach this conclusion, we need not consider Wal–Mart's second point. Accordingly, we reverse the judgment.

PREWITT, J., concurs.

BARNEY, J., concurs.