Anthony (Tony) POLOSKI, et al, Respondents,

v.

WAL–MART STORES, INC., Appellant.

No. WD 59205.

Missouri Court of Appeals, Western District.

Nov. 27, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2002.

Application for Transfer Denied March 19, 2002.

---

**2.** *Ivy v. State,* 792 S.W.2d 12 (Mo.App.1990).

James R. Jarrow, Kansas City, for appellant.

Michael P. Harris, St. Joseph, for respondent.

RONALD R. HOLLIGER, Judge.

Wal–Mart Stores, Inc. appeals the Circuit Court's denial of its motion for a directed verdict and motion for judgment notwithstanding the verdict in a wrongful death suit resulting from the death of Hazel Poloski in a pedestrian and auto collision in a Wal–Mart store parking lot in St. Joseph, Missouri in 1997. Wal–Mart argues that the Circuit Court erred in denying its motions because there was no substantial evidence to show that any negligent act or omission on its part caused or contributed to cause Ms. Poloski's death, and that the risk of harm from the open and obvious condition of the Wal–Mart parking lot existed only due to the driver's failure to exercise due care. Because there was substantial evidence from which the jury could find that Wal–Mart's negligence contributed to cause Ms. Poloski's death, and because the risk of harm did not exist only as a result of the plaintiff's failure to exercise due care, we affirm.

### Facts

Hazel Poloski was struck and killed by Elmarie Brooner in the Wal–Mart parking lot in September 1997. At the time of the accident, Ms. Poloski was seventy-nine years old, and Ms. Brooner was seventy-six. Respondents, Ms. Poloski's husband and children, filed a wrongful death suit against Wal–Mart and Ms. Brooner in March 1998. In October 1998 respondents

settled with Ms. Brooner. At trial in August 2000, the jury found that Wal Mart designed or maintained its parking lot in a negligent manner that contributed to Ms. Poloski's death, and assessed damages of $122,050 against Wal–Mart. The award was reduced by the amount of the settlement with Ms. Brooner.

Ms. Brooner shopped at the St. Joseph Wal–Mart on a regular basis and she was familiar with the parking lot. The accident occurred as Ms. Brooner drove her Chevrolet Suburban parallel to the front of the store. As she looked to her left in search of a parking space, she heard a noise and realized that she had hit something. She stopped and saw a shopping cart in front of her vehicle. Believing that she had only hit the cart, she began driving again. Only when she looked back did she realize that she had run over Ms. Poloski.

When she hit Ms. Poloski, Ms. Brooner was approaching the third of three entrances to the Wal–Mart. Each of these entrances had yellow stripes painted on the pavement designating crosswalks. The yellow paint in front of the third entrance was somewhat faded. The first two crosswalks, but not the third, were marked by pedestrian crosswalk signs. There were no crossing guards and there were no speed bumps. Although the area in front of the store was designated as a no parking zone, four cars were parked to Ms. Brooner's right, in front of the store. At the time of the accident, Wal–Mart had merchandise on display outside the third entrance as part of a sidewalk sale. Although this was the first serious accident at the St. Joseph Wal–Mart, there had been several "near misses" in the parking lot in the past.

The verdict director instructed the jury to find for the plaintiff if they found Wal–Mart negligent in any of six ways: 1) failing to provide speed bumps or design the parking lot to reduce vehicular speed around crosswalks, 2) failing to provide adequate warnings or safeguards for pedestrians using the crosswalks, 3) failure to adequately identify the crosswalks to drivers, 4) distracting drivers with outdoor displays of merchandise, 5) interfering with the ability of drivers to see pedestrians because of the location of the outdoor displays, or 6) obscuring the crosswalks by allowing vehicles to park in the no parking area in front of the store.

### *Standard of Review*

 We review the denial of a motion for directed verdict by reviewing the evidence and all permissible inferences in the light most favorable to the plaintiff, and by disregarding contrary evidence and inferences. *Gatley v. Wal–Mart Stores, Inc.,* 16 S.W.3d 711, 713 (Mo.App.2000). The standard of review for the denial of a motion for a judgment notwithstanding the verdict is the same as that for the denial of a motion for directed verdict. *Mo. Highway and Transp. Comm'n v. Kansas City Cold Storage, Inc.,* 948 S.W.2d 679, 685 (Mo.App.1997). A motion for judgment notwithstanding the verdict should be sustained only when all of the evidence and the reasonable inferences to be drawn therefrom are so strong against the plaintiff's case that there is no room for reasonable minds to differ. *Id.* To survive either motion, plaintiff must have made a submissible case. *Norris v. Jones,* 687 S.W.2d 280, 281 (Mo.App.1985). A submissible case is one in which the plaintiff has presented substantial evidence for every fact essential to liability. *Love v. Hardee's Food Sys., Inc.,* 16 S.W.3d 739, 742 (Mo. App.2000). "Substantial evidence is that which, if true, has probative force upon the issues, and from which the trier of facts can reasonably decide the case." *Id.*

(quoting *Hurlock v. Park Lane Med. Ctr.*, 709 S.W.2d 872, 880 (Mo.App.1985)). Whether evidence is substantial and whether any inferences drawn are reasonable is a question of law. *Id.* We will not overturn a jury's verdict unless there is a complete absence of probative facts to support it. *Id.* We do not, however, supply missing evidence or give the plaintiff the benefit of unreasonable, speculative, or forced inferences. *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 366 (Mo.App.1997).

### Analysis

■ In order to make a submissible case of negligence, a plaintiff is required to prove: (1) the existence of a duty on the part of the defendant to protect plaintiff from injury; (2) the failure of defendant to perform that duty; and (3) an injury to plaintiff directly and proximately resulting from the defendant's failure to perform the duty. *Bond v. California Compensation & Fire Co.*, 963 S.W.2d 692, 697 (Mo.App. 1998). In its first point on appeal, Wal–Mart argues that the trial court erred in denying its motions for a directed verdict and for judgment notwithstanding the verdict because the plaintiff failed to make a submissible case. Wal–Mart does not deny the existence of its duty to Ms. Poloski, or its failure to perform that duty. Instead it argues that plaintiff failed to present substantial evidence that Wal–Mart's negligence caused or contributed to cause Ms. Poloski's death.

■ In order to prove causation, a plaintiff must prove that "but for" the breach of duty, the event would not have occurred. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. banc 1993). In other words, if a reasonable jury could conclude that "but for" any one of the six factors, Ms. Poloski would not have been killed, plaintiff has met its burden and the trial court did not err in denying

the motions for a directed verdict and a judgment notwithstanding the verdict. The "but for" test, discussed in *Callahan*, does not mean that only one actor may have caused the harm:

> [T]here is nothing inconsistent or different about applying a "but for" causation test to a circumstance involving multiple causes. The "but for" causation test operates only to eliminate liability of a defendant who cannot meet this test because such defendant's conduct was not causal. The fact that the conduct of a particular defendant either does or does not meet "but for" causation has no impact on the remaining defendants. The remaining defendants rise or fall on their own "but for" causation test."

*Id.* It is clear that *Callahan* did not mean to eliminate the possibility that two or more actors can contribute to cause a result. They simply each must meet the "but for" test. The "but for": test is neither an onerous nor difficult test for causation. *Id.* at 861–862. It is a "absolute minimum for causation because it is merely causation in fact." *Id.* at 862. The trier of fact normally decides causation, particularly where under the facts of the case reasonable minds could differ as to causation. *Linton v. Mo. Highway and Transp. Comm'n*, 980 S.W.2d 4, 9 (Mo. App.1998). Causation in fact generally is only at issue in determining whether a party has made a submissible case. *Callahan*, 863 S.W.2d at 863. Direction of a verdict would be proper only if the Poloskis failed to make a submissible case on any pleaded and submitted theory of negligence. *Hammon v. Gentemann*, 423 S.W.2d 5, 7 (Mo.App.1967). Therefore, if any of the submitted theories meets the "but for" test, then it is unnecessary to examine the others. *Ragland Mills v. Gen. Motors*, 763 S.W.2d 357, 359–60 (Mo. App.1989). The first of the six factors

listed in the verdict director, Wal–Mart's failure to provide speed bumps or to design its parking lot traffic pattern to reduce vehicular speed in the areas of pedestrian crosswalks, meets this test.

■ Although the jury was presented with contrary evidence, it could have found that the driver was going 15 or 20 miles per hour. It also could have found that the layout of the parking lot directed the attention of drivers to parking areas to their left, while pedestrians leaving the store crossed from their right. Wal–Mart argues that there was no expert testimony that speed was a factor in the accident or that the presence of speed bumps would have slowed the driver. We are not persuaded that such testimony was necessary and that the inferences to be drawn from the evidence leave those issues beyond the ken of an average juror. In addition, the jury could consider that other cars and merchandise on the sidewalk obstructed the driver's view. That the driver testified she did not recall the merchandise does not prohibit the inference that its location, in combination with other factors, combined to make it less likely that the driver would see and avoid collision with the decedent. Another important factor for the jury to consider was the absence of a crosswalk marking sign at the area in question. Although a pole for the sign was present it had been missing for some time, so that the first two crosswalks through which the driver proceeded were marked and the third was not. None of the inferences from this evidence sought by plaintiff and apparently found by the jury defy logic and reason. Rather they present a classic situation where multiple facts all contribute to cause an injury. Such a conclusion was permissible for the jury under the "but for" test. Whether that conclusion was to be ultimately drawn was for the jury's determination and was not, under these facts, a question of law for the court. Since, viewed in the light most favorable to the plaintiff and disregarding all contrary evidence and inferences, there was substantial evidence that Wal–Mart's negligent design of its parking lot was a direct and proximate cause of Ms. Poloski's death, we need not analyze the other factors.

In its second point on appeal, Wal–Mart argues that the trial court erred in denying its motions for a directed verdict and a judgment notwithstanding the verdict because it was not liable to Ms. Poloski. Missouri has adopted the Restatement (Second) of Torts § 343 which provides that a possessor of land is liable to an invitee such as Ms. Poloski only if the possessor:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Harris v. Niehaus,* 857 S.W.2d 222, 225–226 (Mo. banc 1993).

Wal–Mart does not argue that it was unaware of the risk of harm. Instead it argues that it is not liable because the risk of harm resulted only from the driver's failure to exercise due care.

■ In general, a possessor of land does not have a duty to protect invitees against conditions that are open and obvious as a matter of law. *Peterson v. Summit Fitness, Inc.,* 920 S.W.2d 928, 933 (Mo.App.1996). There is an exception to this rule. The possessor of land will be liable if the possessor "should anticipate the harm despite such knowledge or obvi-

ousness." Restatement (Second) of Torts § 343A(1)( ). However, "where the danger is open and obvious as a matter of law and the risk of harm exists only if the plaintiff fails to exercise due care," the possessor will not be held liable. *Harris v. Niehaus,* 857 S.W.2d at 227.

 Wal–Mart argues that the dangerous condition of the parking lot was open and obvious, and that the risk of harm existed only due to *Elmarie Brooner's* failure to exercise due care, and that, therefore, it should be relieved of liability. This argument misses the mark. The focus of the Restatement (Second) of Torts § 343A is the relationship between the injured invitee and the possessor of land. This is evident from the text of § 343A(1), which states that the possessor will not be liable "to his invitees for physical harm caused *to them* by any activity or condition on the land whose danger is known or obvious *to them.*" The expectation is that each invitee will protect himself or herself, not that invitees will protect one another [1].

Missouri case law also consistently refers to the *plaintiff's* failure to exercise due care. For example, in *Peterson,* the parties disagreed over whether it was reasonable to expect Summit Fitness to anticipate that the nine-year-old injured plaintiff would forget during her swim that one side of the pool consisted of a ledge with a four foot drop-off on the other side. 920 S.W.2d at 933. In *Smoot v. Vanderford,* 895 S.W.2d 233 (Mo.App.1995), the issue was whether injured plaintiff or the defen-

dants had created the risk of harm. The plaintiff, trimming a tree at the defendant's request, had placed his ladder in a precarious position. *Id.* at 234. The question was described in *Harris* as whether the possessor of the land could reasonably rely "on its invitees to protect *themselves* from this danger." 857 S.W.2d at 226. (emphasis added).

This case differs from *Harris* and the cases that follow it in that in those cases, the plaintiff was the same invitee whose failure to exercise due care created the risk of harm. In this case, the failure to exercise due care was that of a third party. We can find no basis to extend this rule to cover situations where the plaintiff has taken due care, but has still been injured as a result of the negligence of both the possessor of land and a third party. We therefore affirm.

EDWIN H. SMITH, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.

---

1. See 4 Fowler v. Harper, et al, The Law of Torts (2d ed.1986) interpreting Restatement (Second) of Torts § 343 (1965) as requiring that the possessor "must exercise reasonable care to protect invitees against a danger against which he should expect that they will fail to protect themselves." Id. at § 21.2 n. 8; stating that the duty of disclosure that normally insulates the possessor of land "is now subject to the limitation that additional rea-

sonable measures may be required if the owner or occupier should expect that an invitee will fail to protect himself notwithstanding notice of the hazard." Id. at § 21.5; and citing § 343A as a shift in doctrine away from the "individualism of the common law in relationships wherein it was felt that the duty of self-protection against many hazards rested primarily on each participant." Id. at § 21.2.